[No. 72428-8. En Banc.]
Argued January 16, 2003. Decided March 20, 2003.

WASHINGTON INDEPENDENT TELEPHONE ASSOCIATION, ET AL.,
*Petitioners*, v. THE WASHINGTON UTILITIES AND TRANSPORTATION
COMMISSION, ET AL., *Respondents*.

18

*Richard A. Finnigan*, for petitioners.

*Christine O. Gregoire, Attorney General*, and *Shannon E. Smith, Assistant*, and *Judith A. Endejan* (of *Graham & Dunn, P.C.*), for respondents.

*Brooks E. Harlow, David L. Rice, David Lafuria*, and *Steven Chernoff* on behalf of RCC Minnesota, Inc., amicus curiae.

OWENS, J. — The Washington Independent Telephone Association (the Association), a trade organization of independent rural telephone companies, claims that the Washington Utilities and Transportation Commission (the Commission) violated the Association members' due process rights by designating, at an open public meeting, an additional telecommunications provider in the rural areas previously served exclusively by the Association members. The Association members argue that, as recipients of federal funding, they had a property interest in their designations as sole telecommunications providers and that they were therefore entitled to a full adjudicative hearing on the petition of United States Cellular Corporation (USCC). Alternatively, they argue that the Commission's decision

was arbitrary and capricious under the Washington Administrative Procedure Act, chapter 34.05 RCW (WAPA).

We conclude, first, that the Association members did not establish that they had a constitutionally protected property interest in their status as exclusive telecommunications providers in their service areas; consequently, they were not entitled to an adjudicative hearing on USCC's petition for designation as an additional provider. Second, we agree with the Court of Appeals that the Association and its members have not shown that the Commission acted arbitrarily or capriciously in concluding that USCC met the statutory requirements for designation as an additional telecommunications provider.

## FACTS

■ The Telecommunications Act of 1996, 47 U.S.C. §§ 151-614 (the 1996 Act), was Congress's response to the dramatic technological advances in the communications field in recent decades. In one commentator's words, with the passage of the 1996 Act, "the tortoise of federal law finally caught up with the hare of communications technology." Michael I. Meyerson, *Ideas of the Marketplace: A Guide to the 1996 Telecommunications Act,*" 49 FED. COMM. L.J. 251, 252 (1997). Updating the Communications Act of 1934 (the 1934 Act), the 1996 Act aims to reduce regulation and enhance competition:

> This law represents a vision of a telecommunications marketplace where the flexibility and innovation of competition replaces the heavy hand of regulation. It is based on the premise that technological changes will permit a flourishing of telecommunications carriers, engaged in head-to-head competition, resulting in a multitude of communications carriers and programmers being made available to the American consumer.

*Id.* Just as the 1934 Act sought to ensure nationwide, affordable telecommunications service, *see* 47 U.S.C. § 151, the 1996 Act likewise recognizes the goal of universal service: "Access to advanced telecommunications and infor-

mation services should be provided in all regions of the Nation." *Id.* § 254(b)(2). To meet the goal of serving telecommunications "[c]onsumers in all regions of the Nation, including low-income consumers and those in rural, insular, and high cost areas," *id.* § 254(b)(3), the 1996 Act requires all interstate telecommunications providers to contribute equitably to a federal universal service fund. *Id.* § 254(b)(4). To promote universal service and foster competition, the 1996 Act permits state commissions to designate companies as "[e]ligible telecommunications carriers" (ETCs), a status entitling the companies to a subsidy from the federal universal service fund. 47 U.S.C. § 214(e)(1).

The Association members and USCC were among the many Washington telecommunications companies to petition the Commission in October 1997 for designation as ETCs pursuant to 47 U.S.C. § 214(e). The Commission considered the petitions and their accompanying written submissions at open public meetings on November 26 and December 10, 1997. On December 23, 1997, the Commission issued its initial order designating all of the companies as ETCs in their respective service areas. The Commission's order designated USCC as an ETC in multiple exchanges not served by the Association members.

On December 7, 1999, USCC filed a petition asking the Commission to expand its ETC designation to encompass all of its Washington service areas. The petition represented the first time the Commission had been asked to designate an additional ETC in areas already served by an Association member.[1] The 1996 Act permits the designation of additional ETCs in rural areas so long as (1) the additional ETC can provide the required level of service and (2) the State commission finds that the additional designation would be "in the public interest":

---

[1] Pet. for Review at 3-4, 5-6. Amicus RCC Minnesota, Inc. (RCC), reports that the Association has since appealed in Thurston County Superior Court the Commission's August 14, 2002, designation of RCC as an ETC in some of the areas served by Association members. Br. of Amicus RCC at 1.

Upon request and consistent with the public interest, convenience, and necessity, the State commission may, in the case of an area served by a rural telephone company, . . . designate more than one common carrier as an eligible telecommunications carrier for a service area designated by the State commission, so long as each additional requesting carrier meets the requirements of paragraph (1). Before designating an additional eligible telecommunications carrier for an area served by a rural telephone company, the State commission shall find that the designation is in the public interest.

47 U.S.C. § 214(e)(2).

The Commission included USCC's petition for designation as an additional rural ETC in its report of filings and placed the petition on its public agenda for its regularly scheduled, open public meeting on December 29, 1999.[2] The Association's counsel learned of the petition from the report of filings and acquired a copy of the petition two weeks before the scheduled meeting. On December 28, 1999, the Association members filed a motion to dismiss, along with a protest to, USCC's petition, arguing (1) that USCC was not a "common carrier" as required under 47 U.S.C. § 214(e)(2), and (2) that USCC's petition did not satisfy the requirements for ETC status prescribed in 47 U.S.C. § 214(e)(1)(A). USCC filed responses to the motion and the protest on December 29, 1999. The Commission's staff drafted a report recommending that USCC's petition be granted.

At the December 29 open meeting, counsel for USCC and the Association members appeared through counsel. Addressing first the Association's motion to dismiss on the grounds that USCC was not a common carrier, the Commission granted USCC's oral motion to amend its petition "to include the license holders of its Washington license areas as well as USCC when qualifying USCC as an [ETC]." Administrative Record (AR) at 338. (USCC filed its amended petition the following day.) The Commission then

---

[2] The Commission posts its report of filings and its open meeting agendas on its website, *www.wutc.wa.gov*. USCC's petition was posted to the website on December 13, 1999.

considered USCC's petition and received the sworn testimony of USCC representative Robert W. Keeger, who stated that USCC would comply with the statutorily prescribed requirements for ETC status. The Commission called for comments from Bob Shirley, a member of the Commission's telecommunications staff. After receiving the arguments of counsel for the Association members, the Commission granted USCC's petition by a vote of two to one. The Commission issued an order granting USCC's petition on December 30, 1999. *See* AR at 306-07 (Second Suppl. Order Granting Pet. for Designation as Eligible Telecomms. Carrier). On January 26, 2000, the Commission issued its final written order on the matter, setting forth its reasoning in detail. *See* AR at 346-64 (Third Suppl. Order Granting Pet. for Designation as Eligible Telecomms. Carrier).

On January 27, 2000, the Association and its members petitioned for review in Thurston County Superior Court, and on February 16, 2000, USCC intervened. The superior court denied the Association's administrative appeal and affirmed the Commission's second and third supplemental orders. The Association appealed, and the Court of Appeals affirmed. *Wash. Indep. Tel. Ass'n v. Utils. & Transp. Comm'n*, 110 Wn. App. 498, 41 P.3d 1212 (2002). This court granted the Association's petition for review.

## ISSUES

(1) Did the status of the Association members as sole ETCs in their service areas constitute a protected property interest entitling them to procedural due process under the fourteenth amendment to the United States Constitution?

(2) Was the Commission's designation of USCC as an additional ETC "arbitrary or capricious" under the WAPA?

## ANALYSIS

*Standard of Review.* The Association and its members contend that the Commission violated the Association

members' Fourteenth Amendment due process rights by designating USCC as an additional rural ETC without an adjudicative hearing. The applicability of the constitutional guaranty raises a question of law subject to de novo review. *Weden v. San Juan County*, 135 Wn.2d 678, 693, 958 P.2d 273 (1998); *Washam v. Sonntag*, 74 Wn. App. 504, 507, 874 P.2d 188 (1994). This court's review of the Association's alternative argument—that the Commission's decision was "[a]rbitrary or capricious" under RCW 34.05.570(4)(c)(iii)—is likewise de novo. An appellate court reviewing agency action "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

 *Property Interest of Association Members in Status as Sole ETCs*. Nothing in the 1996 Act or state law requires the Commission to hold an adjudicative proceeding before designating a telecommunications carrier an ETC. However, the Association and its members claim that their status as the *sole* ETCs designated in their service areas constitutes a property interest protected by the Fourteenth Amendment.

Their claim is insupportable. In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), the United States Supreme Court defined the nature of the property interests protected by the Fourteenth Amendment:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Id.* at 569-70 (footnote omitted).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577. Thus, the *Roth* Court determined that, where an assistant professor's employment contract provided that his appointment was for nine months only, he had "absolutely no possible claim of entitlement to re-employment" for the following year. *Id.* at 578. Nor could a source for the entitlement be found in "any state statute or University rule or policy." *Id.* In sum, the Court concluded that, although Roth "surely had an abstract concern in being re-hired, . . . he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." *Id.*

Here, the Association members have identified no state or federal law or regulation entitling them to designation as *exclusive* ETCs in their service areas. To the contrary, the statute that gives the Commission the authority to designate ETCs in this state plainly provides that "the State commission *may*, in the case of an area served by a rural telephone company, . . . designate *more than one* common carrier as an eligible telecommunications carrier for a service area." 47 U.S.C. § 214(e)(2) (emphasis added). Just as the Association members can point to no source for the alleged property interest, they have cited no case law even suggesting that a statute permitting multiple designees may nevertheless implicitly entitle an individual designee to procedural due process before additional designations may be made.

Because the Association and its members failed to establish a protected property interest in their status as sole ETCs, this court will not reach the second step in the due process analysis—the application of the three-pronged test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-35, 96 S.

Ct. 893, 47 L. Ed. 2d 18 (1976), to determine the level of due process warranted.

■ *Commission's Action as "Arbitrary or Capricious" Under the WAPA.* The Association and its members seek review of the Commission's action under RCW 34.05-.570(4)(c), which prescribes the standard of review for agency actions other than rules and adjudicative orders:

> Relief for persons aggrieved by the performance of an agency action . . . can be granted only if the court determines that the action is:
>
> (i) Unconstitutional;
>
> (ii) Outside the statutory authority of the agency or the authority conferred by a provision of law;
>
> (iii) *Arbitrary or capricious*; or
>
> (iv) Taken by persons who were not properly constituted as agency officials lawfully entitled to take such action.

RCW 34.05.570(4)(c) (emphasis added). This court has defined arbitrary or capricious agency action as action that " 'is willful and unreasoning and taken without regard to the attending facts or circumstances.' " *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002) (quoting *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 383, 932 P.2d 139 (1997)); *see Wash. Indep. Tel. Ass'n v. Utils. & Transp. Comm'n*, 148 Wn.2d 887, 905, 64 P.3d 606 (2003). The Association and its members contend, then, that the Commission's decision to designate USCC as a second ETC in the areas previously served solely by the Association members was a "willful and unreasoning [action] . . . taken without regard to the attending facts or circumstances." Specifically, the Association and its members assert that the Commission ignored USCC's failure, first, to satisfy the requirements for ETC status prescribed in 47 U.S.C. § 214(e)(1)(A) and, second, to establish that its designation was "in the public interest," as required in 47 U.S.C. § 214(e)(2).

## 1. USCC's Satisfaction of Statutory ETC Requirements

Under 47 U.S.C. § 214(e)(1)(A) and § 254(c)(1), an ETC must be able to offer the services that the Federal Communications Commission (FCC) defines as essential for universal service. As USCC states, its "petition, as supplemented by Mr. Keeger's statements at the open meeting, demonstrated that USCC could and would provide the services required by federal universal service rules." Br. of Intervenor USCC at 28. The Commission noted in its third supplemental order that, "[a]t the December 29, 1999, open meeting, USCC made the same showing, through Mr. Keeger, that the Commission has required of other carriers that are designated ETCs." AR at 355. More specifically, the record establishes that USCC provides the services required of ETCs, "with the exception of toll limitation and enhanced 911 services, which the [Commission] waived." Suppl. Br. of Resp't at 17 (citing AR at 112-15; Tr. of Open Meeting (Dec. 29, 1999) at 13-15, attached as App. A to Comm'n's Resp. to Pet. for Review). Having previously certified USCC as an ETC in 1997, the Commission had no reason to doubt USCC's renewed affirmation that it could and would be able to provide the required services. Finally, USCC reasonably rejects the assertion of the Association and its members that USCC should have been required to present evidence regarding such matters as its signal capacity or its calling plans and pricing, since such matters go beyond the requirements of § 214(e)(1). And the Commission expressly "disagree[d] with the rural carriers that USCC must provide service prior to being designated an ETC, so long as the company provides service at the time it actually receives federal funds"; the Commission recognized "that designation should be conferrable prior to the provision of service in order to avoid a bar to entry in high-cost locations." AR at 355.

In sum, the Commission considered USCC's petition, the sworn testimony of USCC's representative, and USCC's prior petition and waiver. This court should not conclude that the Commission's decision was an " 'unreasoning [action] . . . taken without regard to the attending facts or

circumstances.'" *Rios*, 145 Wn.2d at 501 (quoting *Hillis*, 131 Wn.2d at 383).

### 2. Commission's Consideration of the Public Interest

 Nor did the Commission act arbitrarily or capriciously when it determined that granting USCC's petition would be "in the public interest." 47 U.S.C. § 214(e)(2). In considering the public interest, the Commission recognized the 1996 Act's interrelated goals of fostering competition and advancing universal service.[3] *See Alenco Communications, Inc. v. Fed. Communications Comm'n*, 201 F.3d 608, 615 (5th Cir. 2000) (observing that "FCC must see to it that *both* universal service and local competition are realized; one cannot be sacrificed in favor of the other"). To reach its conclusion that granting USCC's petition would serve the public interest, the Commission considered a report prepared by its own staff, its prior order of December 23, 1997, USCC's petition and the Association members' motions in opposition, argument by USCC's and the Association's counsel at the open meeting, and the governing statutes and regulations. *See* AR at 356. The staff report offered the following conclusion: "The petition of [USCC] promotes competition and customer choice, and the benefits that result. This is consistent with Commission efforts to ensure that all customers, no matter where located, receive all the benefits that competition in the telecommunications sector can provide. Granting the petition is in the public interest." AR at 181. In its third supplemental order, the Commission explained that USCC's receipt of universal service support would "increase[ ] the likelihood that cellular technology will become available to more rural consumers at an affordable price." AR at 357. The Commission noted in particular that subsidized cellular service could give rural customers "increased access to two additional services (Internet and

---

[3] " 'Public interest' is a broad concept encompassing the welfare of present and future consumers, stakeholders, and the general public. The 'public interest' is broader than the goal of competition alone, . . . [and] broader than the goal of advancing universal service." AR at 356. In the Commission's view, granting USCC's petition simultaneously advanced the "narrow goal[s]" of competition and universal service. *Id.*

e-mail) that either are not available today, or are priced too high in comparison to the currently supported wireline service." *Id.*

Neither the Commission's conclusion (that granting USCC's petition was in the public interest), nor the process by which the Commission reached its conclusion, suggests that the Commission's designation of USCC was an " 'unreasoning [action] . . . taken without regard to the attending facts or circumstances.' " *Rios*, 145 Wn.2d at 501 (quoting *Hillis*, 131 Wn.2d at 383).

## CONCLUSION

The Association members failed to establish that they had a constitutionally protected property interest in their original status as exclusive ETCs in their service areas. Absent such a property interest, they were not entitled to an adjudicative hearing on USCC's petition for ETC status. Nor did the Association and its members show that the Commission had acted arbitrarily or capriciously in determining, first, that USCC met the statutory requirements for ETC status and, second, that USCC's designation as an additional ETC would serve the public interest.

We affirm the Court of Appeals.

ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and FAIRHURST, JJ., concur.