244 P.3d 1010 (2011)
Kimberly S. HICKETHIER, Appellant,
v.
WASHINGTON STATE DEPARTMENT OF LICENSING, Respondent.
No. 28776-9-III.
Court of Appeals of Washington, Division 3.
January 4, 2011.
*1012 John Montgomery, Waldo Schweda & Montgomery PS, Spokane, WA, for Appellant.
Jennifer Steele, Attorney General's Office, Seattle, WA, for Respondent.
SWEENEY, J.
¶ 1 This appeal follows the suspension of a real estate broker's license by the Washington State Department of Licensing for various violations of statutes and administrative regulations applicable to real estate brokers. The essential challenges are to the factual basis for the legal conclusions to support the various violations. We conclude that the evidence supports these conclusions, and we affirm the superior court.

FACTS
¶ 2 Kimberly Hickethier was a licensed real estate broker. She represented Anne Sumner in the purchase of a manufactured home at Loon Lake, Washington. Ms. Sumner wanted a power pole and other items repaired, replaced, or installed before closing. Ms. Hickethier suggested that Paul Francis do the work. Ms. Hickethier was developing an intimate relationship with Mr. Francis. Ms. Sumner did not know this. Ms. Sumner hired Mr. Francis to make the repairs for $2,900.
¶ 3 On September 20, 2003, Ms. Sumner and the seller signed a purchase and sale agreement. The seller agreed to hold back $2,000 to pay "for needed repairs, power pole replacement/repair, repair main bathroom fan, scraping/priming and painting the skirting, replacing stove top, ensuring heat pump is working." Clerk's Papers (CP) at 480. And Ms. Hickethier agreed to give the seller's tenant 30 days to vacate the home.
¶ 4 Ms. Hickethier performed the final walk through for Ms. Sumner. She saw that the power pole had not been fixed, but she did not tell Ms. Sumner. Ms. Sumner closed the sale on October 17; she thought that everything had been repaired or replaced.
¶ 5 Ms. Sumner's daughter, Laura Hood, tried to get the keys to the home from Ms. Hickethier after the tenant's 30-day notice to *1013 vacate expired. She was not able to get the keys for a week and ultimately forced her way into the home. Ms. Sumner went to the home for the first time after buying it and noticed that the power pole and other things had not been fixed properly. Ms. Sumner made and paid for the repairs and asked Ms. Hickethier to reimburse her. Ms. Hickethier refused.
¶ 6 Ms. Hickethier had asked the closing agent to stop payment on a $2,000 check issued to Mr. Francis. She told the closing agent to issue a $2,000 check to her and she would pay Mr. Francis directly. The closing agent wrote Ms. Hickethier a $2,000 check, and Ms. Hickethier cashed it.
¶ 7 Ms. Sumner complained to the Department of Licensing (Department) around April 2004. Investigator Shannon Taylor investigated her complaint. Ms. Taylor learned that Ms. Hickethier had signed a document authorizing Mr. Francis to act as her rental agent and that Mr. Francis had business cards that identified him as a rental agent. Mr. Francis told Ms. Taylor that he prepared contracts, procured renters, and collected rents for Ms. Hickethier's rental properties.
¶ 8 The Department cited Ms. Hickethier on September 17, 2007, for multiple counts of unprofessional conduct based on Ms. Sumner's complaint and Mr. Francis's information. An administrative law judge concluded that the Department had proved three counts of unprofessional conduct (converting client funds, authorizing an unlicensed person to act as a rental agent, and failing to give her client keys to the property) and revoked Ms. Hickethier's broker's license for five years. She appealed to the director of the Department. The director affirmed the ruling and sanction. She further appealed to the superior court. It also affirmed the ruling and sanction.

DISCUSSION

STANDARDS OF REVIEW
¶ 9 The Administrative Procedure Act, chapter 34.05 RCW, structures our review of the director's final order. RCW 18.235.090. Ms. Hickethier challenges the sufficiency of many of the director's findings, the propriety of her conclusions and sanction, and the timeliness of the hearing. We give great weight to the director's interpretation of any ambiguous statute. Waste Mgmt. of Seattle, Inc. v. Utilities & Transp. Comm'n, 123 Wash.2d 621, 628, 869 P.2d 1034 (1994). But we must grant Ms. Hickethier relief from the order if:
 The agency failed to follow prescribed procedure;
 The agency erroneously applied the law;
 The order is not supported by substantial evidence when viewed in light of the whole record; or
 The order is arbitrary or capricious.
RCW 34.05.570(3)(c)-(e), (i).
¶ 10 We review challenged findings of fact for substantial evidence. Lee's Drywall Co. v. Dep't of Labor & Indus., 141 Wash.App. 859, 864, 173 P.3d 934 (2007). We review legal issues de novo, including whether findings of fact support conclusions of law, whether the law was applied correctly, and whether a decision was arbitrary or capricious. Timberlane Mobile Home Park v. Human Rights Comm'n ex rel. Campbell, 122 Wash.App. 896, 900, 95 P.3d 1288 (2004); Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 149 Wash.2d 17, 24, 65 P.3d 319 (2003). A decision is arbitrary or capricious if it is willful and unreasoning and disregards or does not consider the facts and circumstances underlying the decision. Alpha Kappa Lambda Fraternity v. Wash. State Univ., 152 Wash.App. 401, 421, 216 P.3d 451 (2009). A decision is not arbitrary or capricious if there is room for more than one opinion and the decision is based on honest and due consideration, even if we disagree with it. Id. at 421-22, 216 P.3d 451.

FAILURE TO DEPOSIT THE $2,000 Check IN A TRUST ACCOUNT
¶ 11 Ms. Hickethier first contends that the director erred by concluding that she violated WAC 308-124E-012(5) by cashing the $2,000 check. WAC 308-124E-012(5) requires that a real estate broker deposit money related to a real estate sale into a *1014 trust account unless the money is subject to an earnest money agreement with different terms or the money is a payment on real estate owned by the real estate broker or her firm:
(5) All funds or moneys received for any reason pertaining to the sale . . . of real estate . . . shall be deposited in the broker's real estate trust bank account not later than the first banking day following receipt thereof; except:
(a) Checks received as earnest money deposits when the earnest money agreement states that a check is to be held for a specified length of time or until the occurrence of a specific event; and
(b) Checks, funds or moneys received as rent, contract payments or mortgage payments on real estate or business opportunities, owned exclusively by the real estate broker or the broker's real estate firm.
WAC 308-124E-012.
¶ 12 Ms. Hickethier asserts that she did not deposit the check into the trust account because it reimbursed her for payments made to Mr. Francis with her personal funds. She says WAC 308-124E-012(14)(a) specifically forbids depositing funds that belong to a real estate broker into a client's trust account.
¶ 13 The unchallenged finding on this is that Ms. Hickethier has no record or receipt showing that she ever paid Mr. Francis. CP at 534 (Finding of Fact 52). The money that Ms. Hickethier received was part of the sale of the home. The purchase and sale agreement and the closing agent's declaration support the finding that the $2,000 had been set aside to pay for repair work, not to reimburse Ms. Hickethier. Ms. Hickethier, then, had a duty to deposit the check into a trust account. WAC 308-124E-012(5). The director properly concluded that her failure to do so violated WAC 308-124E-012.

CONVERSION  CASHING THE $2,000 Check
¶ 14 Ms. Hickethier also challenges the director's conclusion that she converted the check by cashing it. The director may sanction a real estate broker for converting money to her own use when the money is "delivered . . . in trust or on condition." Former RCW 18.85.230(5) (2002). Ms. Hickethier asserts that the $2,000 check she received was not delivered in trust or on condition. She continues to maintain that she received the check as reimbursement. She did not. This record supports the director's finding that the $2,000 was set aside for repairs. Ms. Hickethier admitted that she cashed the check for herself. The cancelled check is in the record. Her admission and the check support the finding that she cashed the check instead of depositing it in the real estate trust account. And these findings support the conclusion that Ms. Hickethier violated former RCW 18.85.230(5) by converting money that was delivered to her in trust.

FAILURE TO DISCLOSE REPAIRS NOT MADE
¶ 15 Ms. Hickethier next challenges the director's conclusion that she was negligent for failing to tell Ms. Sumner that repairs were not complete. Ms. Hickethier suggests that she had no duty to assure that the repairs were complete. She also claims there is no showing that she told Ms. Sumner the repairs were complete or that Ms. Sumner was harmed.
¶ 16 A real estate broker owes the client a duty to "disclose all existing material facts known by the licensee and not apparent or readily ascertainable to a party." RCW 18.86.030(1)(d). The licensee can be sanctioned for "[k]nowingly committing . . . concealment. . . whereby any other person lawfully relies upon the word, representation or conduct of the licensee." Former RCW 18.85.230(3). Concealment is the act of withholding information. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 469 (1993). Conduct that falls below a legal standard established for the protection of others against unreasonable risk amounts to negligence. Hunsley v. Giard, 87 Wash.2d 424, 435, 553 P.2d 1096 (1976). Unprofessional conduct includes negligence. RCW 18.235.130(4).
¶ 17 Ms. Hickethier and Ms. Sumner had an agent-client relationship. They agreed that Ms. Hickethier would perform the final walk through before closing to assure that repairs were done. Ms. Hickethier, then, *1015 had a duty to tell Ms. Sumner of anything that might prevent her from closing. RCW 18.86.030(1). Ms. Hickethier told Ms. Taylor, the investigator, that she inspected the property before closing and found that the power pole had not been fixed:
Prior to closing, I inspected the property & found all issues except the power pole to be taken care of. I spoke with Frank at Avista & was told the pole would be replaced. At that point in time all seemed well, so closing proceeded.
CP at 374. She did not, however, tell Ms. Sumner that the power pole had not been fixed. She did not tell Ms. Sumner anything. Ms. Sumner relied on Ms. Hickethier's silence and closed the real estate transaction with the belief that the repairs were complete. By the time Ms. Sumner learned that the repairs were not complete, the money set aside for repairs was gone. This supports the director's finding that Ms. Hickethier "failed to inform Ms. Sumner that the power pole had not been fixed nor even addressed" and the finding that Avista would replace the power pole. CP at 529. And these findings support the director's conclusion that Ms. Hickethier's conduct was unprofessional. CP at 542-43.

FAILURE TO DELIVER KEYS TO THE BUYER
¶ 18 Ms. Hickethier contends that failing to give Ms. Sumner or her daughter a key to their home did not amount to unprofessional conduct. Unprofessional conduct includes "[i]ncompetence, negligence, or malpractice that results in harm or damage to another or that creates an unreasonable risk of harm or damage to another." RCW 18.235.130(4).
¶ 19 Ms. Hickethier asserts she had no duty to deliver keys to her client because the previous owner's tenant had 30 days to vacate the property. But 30 days had passed before Ms. Hood attempted to take possession of the home. Ms. Hickethier also conceded she had a duty to deliver the keys:
Q Now, is it your responsibility to provide access to properties once it's closed and you represent the purchaser of the property?
A Generally it is. It's the agent's job to make sure that the new buyer has keys, whether it's through the closing attorney or through a hidden or  generally it is, though.
Report of Proceedings (RP) at 252. She then testified that she did not recall giving Ms. Sumner or Ms. Hood keys to the property after closing. And Ms. Hood testified that she tried without success to get the keys from Ms. Hickethier. This supports the director's findings that Ms. Hood could not take possession of the home because Ms. Hickethier would not return her calls or give her keys. And those findings support the conclusion of unprofessional conduct. RCW 18.235.130(4); Hunsley, 87 Wash.2d at 435, 553 P.2d 1096.

PERMITTING UNLICENSED PERSON TO ACT AS AGENT
¶ 20 Ms. Hickethier also takes issue with the director's conclusion that she was negligent for authorizing Mr. Francis to act as a rental agent on her behalf. She argues that the Department did not show she intended for or authorized Mr. Francis to act as a real estate agent on her behalf. She also argues that the Department did not show harm. She contends that she instead intended to create a common law agency relationship between her and Mr. Francis.
¶ 21 Ms. Hickethier signed a document that read, "This document will authorize Paul Francis to act as my agent pertaining to any and all real property transactions regarding rental properties." CP at 426. The document also says, "this document authorizes Paul Francis to engage in the pursuit of judgments, garnishment and/or execution of any and all matters pertaining to said transactions regarding rental properties." CP at 426. Ms. Hickethier, then, clearly authorized Mr. Francis to act as a rental agent, and, of course, he is not licensed. The Department alleged that this amounted to negligence, in violation of RCW 18.235.130(4). And the director agreed.
¶ 22 "[N]egligence . . . that results in harm or damage to another or that creates an unreasonable risk of harm or damage to another" is unprofessional conduct. RCW *1016 18.235.130(4). This negligence standard does not require proof of intent, so it does not matter what Ms. Hickethier subjectively intended when she signed the document. Again, negligence is conduct that falls below a legal standard established to protect others against unreasonable risk. Hunsley, 87 Wash.2d at 435, 553 P.2d 1096. And Ms. Hickethier does not deny that she signed the document. The document is substantial evidence that she authorized Mr. Francis to be a rental agent.
¶ 23 The negligence standard here also does not require proof of damage. Proof that the conduct created an unreasonable risk of harm or damage is enough. RCW 18.235.130(4). An unlicensed person may not act as a real estate broker. RCW 18.85.331,.411. A broker is a person who performs real estate brokerage services, including renting real estate, negotiating or offering to negotiate the rental of real estate, holding oneself out to the public by any representation that one is engaged in real estate brokerage services, and collecting rents. Former RCW 18.85.010(1) (2003). The purpose of this law is to protect the public. RCW 18.235.005.
¶ 24 Mr. Francis was not a licensed real estate agent. Yet he prepared contracts, procured renters, and collected rents for Ms. Hickethier's rental properties. RP at 118. He also identified himself as a rental agent on his business cards. His actions are substantial evidence of an unreasonable risk of harm to the public given the complete absence of state authority to act as a rental agent. The director, then, properly concluded that Ms. Hickethier negligently authorized Mr. Francis to act as a rental agent.

FAILURE TO PROVIDE AN INVOICE FOR WORK
¶ 25 Ms. Hickethier next challenges the director's conclusion that she violated RCW 18.86.030. That statute requires that a real estate licensee exercise reasonable skill and care, deal honestly and in good faith, provide written communication to either party in a timely manner, disclose all existing material facts known by the licensee and not apparent or readily ascertainable to a party, and account in a timely manner for all money received on behalf of either party. RCW 18.86.030(1)(a)-(e).
¶ 26 The director concluded that Ms. Hickethier violated this statute by failing to provide Ms. Sumner with an accounting of Mr. Francis's work and by failing to accurately verify whether the repairs were complete:
[Ms. Hickethier's] failure to provide an invoice of the actual work performed and the cost of supplies to complete that work when her client requested, not only reflects poorly upon the quality of the workmanship completed, but constitutes a violation of RCW 18.86.030. [Ms. Hickethier's] personal relationship with Paul Francis at the same time, calls into question her judgment and her professional conduct with regard to verification of the repairs. Given her relationship with Mr. Francis, [Ms. Hickethier] had an even greater duty to be careful when verifying completion of the work Mr. Francis performed. She needed to ensure her client's interests were paramount throughout this transaction, not any interest Mr. Francis might have had, nor any interest [Ms. Hickethier] might have had with regards to her relationship with Mr. Francis.
CP at 543 (Conclusion of Law 8).
¶ 27 Ms. Hickethier contends she could not provide Ms. Sumner with an accounting because Mr. Francis did not give her an invoice. Ms. Hickethier, however, owed Ms. Sumner a duty to account for the $2,000 set aside for repairs that benefitted Ms. Sumner no matter what Mr. Francis did or did not do. RCW 18.86.030(1)(e). She breached that duty by not just failing, but refusing, to account to Ms. Sumner for the repair costs.
¶ 28 Ms. Hickethier also complains that the director's conclusions referencing her relationship with Mr. Francis were irrelevant, inappropriate, and "included for its sordid shock value." Appellant's Br. at 40. We disagree. It is reasonable for the director to infer that Ms. Hickethier's relationship with Mr. Francis affected her ability to exercise reasonable skill and care in representing Ms. Sumner's interests. They were beginning their relationship when Mr. Francis was hired to repair Ms. Sumner's home and when *1017 Ms. Hickethier allegedly paid him for his work. The reference to the personal relationship, to the extent that it is a finding of fact, supports the director's conclusion. We, therefore, reject Ms. Hickethier's challenges to conclusion of law 8 on the failure to provide an invoice for repairs.

DENIAL OF DUE PROCESS ON ADMINISTRATIVE APPEAL
¶ 29 Ms. Hickethier contends for the first time that she was denied due process of law because (1) it took five years from the date of the events at issue to hold a hearing on the charges against her, (2) the director shifted the burden of proof to her on the conversion issue, and (3) the director's conclusions do not specify the sections of the statutes or regulations she violated.
¶ 30 An administrative proceeding to revoke a professional license is quasi-criminal. Wash. Med. Disciplinary Bd. v. Johnston, 99 Wash.2d 466, 474, 663 P.2d 457 (1983). A person subject to such proceedings is entitled to due process of law. Id. A party may not, however, raise an unpreserved error for the first time on appeal unless it amounts to a manifest constitutional error. RAP 2.5(a)(3).
¶ 31 (1) Hearing. Ms. Hickethier contends her ability to defend herself against the Department's charges was impaired because the Department waited several years to hold a hearing on the matter. But she cites no support for her assumption that the alleged error here implicates a constitutional right. And an agency may hold a hearing "any time," RCW 34.05.413(1), and "as soon as convenient, but the hearing may not be held earlier than thirty days after service of charges." Former RCW 18.235.050(2) (2002).
¶ 32 This is, first of all, hardly an error of constitutional magnitude. Moreover, a delayed proceeding "does not per se prejudice the accused's ability to defend" herself. Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Thus, even if the alleged error was of constitutional magnitude, it is not manifest.
¶ 33 (2) Burden Shifting. Ms. Hickethier argues that the director improperly shifted the burden of proof to her when she concluded that Ms. Hickethier had converted funds:
9. [Ms. Hickethier's] actions also constitute a violation of fiduciary duties and responsibilities owed to Ms. Sumner in this transaction. Because the repairs were either not complete or not properly completed, Ms. Sumner demanded a copy of the invoice for the supplies used and work performed along with an accounting of the $2900 she had paid for the repairs at issue. [Ms. Hickethier] failed to provide an invoice for the repairs performed or an accounting for the money Ms. Sumner paid. [Ms. Hickethier] deposited the $2,000.00 that had been held back for repairs into her personal account. . . .
10. [Ms. Hickethier's] actions further violate RCW 18.85.230, as [Ms. Hickethier] is prohibited from converting any money . . . to her own use . . . when delivered to her in trust or on condition. By requesting the closing attorney pay the $2000 held back for repairs, directly to her, and by then depositing those monies into her personal bank account, the undersigned concludes [Ms. Hickethier] clearly violated the above provision. As addressed earlier, [Ms. Hickethier] can provide no evidence to establish otherwise.

CP at 543-44 (emphasis added). She says the director's statement that, "[Ms. Hickethier] can provide no evidence to establish otherwise," shows the director shifted the burden to her. CP at 544. She likens the statement to a jury instruction that shifts the burden of proof from the state to the defendant. The director's statement was not an instruction. Even if it was, it is certainly not manifest constitutional error. An error is "`manifest'" where it had "`practical and identifiable consequences in the trial of the case.'" State v. Kirkpatrick, 160 Wash.2d 873, 880, 161 P.3d 990 (2007) (quoting State v. Stein, 144 Wash.2d 236, 240, 27 P.3d 184 (2001)). And the director's statement does not place the burden of proof on Ms. Hickethier when viewed in context. The director merely suggests the obviousthe evidence of conversion was undisputed. There is no *1018 manifest constitutional error here. RAP 2.5(a)(3). Indeed, there is no error at all.
¶ 34 (3) Specific Citations. Ms. Hickethier next contends that several conclusions of law do not provide adequate notice of the law she violated because they do not cite to specific subsections of statutes. She maintains that the director's conclusions must be specific because "the Rule of Law" requires it. Br. of Appellant at 38.
¶ 35 First, the Department must give notice of the charges in the charging document, not the final order. RCW 18.235.050(1). A flawed charging document may rise to the level of manifest constitutional error and be raised for the first time on appeal. State v. Holt, 104 Wash.2d 315, 320, 704 P.2d 1189 (1985). Ms. Hickethier, however, does not challenge the adequacy of the charging document, and for good reason. The statement of charges cites specific subsections of statutes and regulations that Ms. Hickethier violated. The director's conclusions are clear when viewed in context of that statement of charges. Ms. Hickethier certainly prepared and defended herself based on the specific charges. Again, we see no manifest constitutional error. RAP 2.5(a)(3).

FIVE-YEAR SUSPENSION
¶ 36 Ms. Hickethier also argues that the director's decision to revoke her license for five years is arbitrary and capricious because the Department's recommendation to revoke her license for five years was based on five charges. And the director ultimately concluded that she was responsible for only three of those charges. She says her sanction should, then, be reduced.
¶ 37 A decision is not arbitrary or capricious if there is room for more than one opinion and the decision is based on honesty and due consideration. Alpha Kappa Lambda Fraternity, 152 Wash.App. at 421-22, 216 P.3d 451. The director had discretion to revoke the license upon finding unprofessional conduct. Former RCW 18.235.110(1)(a) (2002). She found unprofessional conduct and, based on that conduct, revoked Ms. Hickethier's license for an interval of five years. CP at 546-47. The director considered the facts and circumstances in deciding Ms. Hickethier's sanction. She based her decision on only those charges that Ms. Hickethier was ultimately held responsible for. The sanction is not, then, arbitrary or capricious; it is instead based on due consideration of the facts. Alpha Kappa Lambda Fraternity, 152 Wash.App. at 421-22, 216 P.3d 451.

ATTORNEY FEES
¶ 38 Ms. Hickethier requests attorney fees under RCW 4.84.350. She has not prevailed, and the Department's position is well taken. We, therefore, deny the request for fees.
¶ 39 We affirm the decisions of the Department and the superior court.
WE CONCUR: BROWN and SIDDOWAY, JJ.