IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

In the Matter of the Marriage of )  No. 81236-0-I
)
BEILEI GUO, )
)
　　　　　　Respondent, )  DIVISION ONE
)
　　and )
)
JIE REN, )  UNPUBLISHED OPINION
)
　　　　　　Appellant. )
_____)

VERELLEN, J. — Under RCW 26.09.191(2)(a)(iii), a trial court can limit a parent's residential time due to a history of domestic violence. Because substantial evidence establishes that Jie Ren physically abused his former wife, Beilei Guo, makes ongoing threats to her, suffers decompensating mental health because of a delusional disorder, lacks anger management, and causes Guo and his two daughters to fear him, the court did not abuse its discretion in entering a parenting plan restricting his residential time.

Ren fails to establish the trial court abused its discretion or denied due process in its management of the trial, or erred in its division of property.

Therefore, we affirm.

<u>FACTS</u>

On February 21, 2004, Jie Ren married Beilei Guo in Shanghai, China. Before moving to the United States, Ren physically abused Guo twice. In 2013, Ren, Guo, and their two daughters moved to Bellevue, Washington.

On October 10, 2018, Guo filed for divorce. Jude McNeil, a parenting plan evaluator and guardian ad litem, was appointed to make recommendations to the court as to the parenting plan and Ren's mental health.

That November, Guo moved into an apartment with their two daughters and obtained a temporary domestic violence protection order (DVPO) against Ren. In December, Ren was arrested for violating the temporary DVPO when he attempted to pick up one of his daughters from the bus stop.

After the temporary orders were entered, Ren's mental health deteriorated. Ren kept guns "everywhere" in the house.[1] Ren sent Guo threatening messages, including that he would "never let her go," that he would "come to find" her, and that he found a cemetery for her body.[2] Ren called himself an "amazing American superhero" and "God's messenger."[3]

In January 2019, the trial court ordered a one-year DVPO that suspended Ren's visitation with his daughters and entered an order to surrender weapons. Ren surrendered 22 guns and 33 knives to the Bellevue Police Department.

---

[1] Report of Proceedings (RP) (Oct. 24, 2019) at 583.

[2] Id. at 594-96.

[3] Clerk's Papers at 336-37.

McNeil referred Ren to Dr. Yie-Wen Kuan for psychological testing. Dr. Kuan, a native Mandarin speaker and an immigrant from Taiwan, evaluated Ren and diagnosed him with a persecutory type of delusional disorder.

After a six-day bench trial, the trial court entered oral findings and conclusions, which were later supplemented by written findings of fact and conclusions of law. Based upon the recommendations of McNeil and Dr. Kuan, the court entered a phased parenting plan, allowing Ren to begin limited daytime residential visits upon completing six months of treatment if the psychiatrist recommends visits and confirms the visits pose no safety threat to his daughters.[4] The plan provides that a post-decree guardian ad litem (GAL) evaluation is required before any overnight visits are allowed. The court noted that these restrictions were "for both domestic violence and Mr. Ren's long struggle with his mental health."[5] The trial court entered a final divorce decree.[6]

The trial court also imposed a "lifetime" DVPO that included Guo and their daughters, but expressly provided that if Ren was "fully compliant with all of the treatment set forth in the parenting plan . . . then [he] may ask the court to modify the protection order."[7]

Ren appeals.

---

[4] McNeil had recommended an initial phase of four months' treatment.

[5] RP (Dec. 5, 2019) at 1013.

[6] On January 13, 2020, the court entered an amended divorce decree, which corrected the address of the parties' residential home.

[7] RP (Dec. 5, 2019) at 1048.

## ANALYSIS

### I.  Parenting Plan

Ren argues that the trial court failed to "reasonably calculate" the restrictions imposed on the parenting plan in accordance with RCW 26.09.191.

We review a trial court's determinations on the provisions of a parenting plan for abuse of discretion.[8]  A trial court abuses its discretion when its decisions are based on untenable grounds or made for untenable reasons.[9]

RCW 26.09.191(2)(a)(iii) permits a trial court to impose restrictions in a parenting plan when a parent has engaged in "a history of acts of domestic violence."  Domestic violence is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking."[10]  A "showing [of] past violence" and "present fear" are sufficient to support a finding of domestic violence.[11]

Ren does not challenge the trial court's findings of fact about domestic violence, making them verities on appeal.[12]  Instead, he appears to argue that the trial court's finding of domestic violence was inadequate because the court did not make a finding in accordance with the "clinical definition of domestic violence."[13]

---

[8] Katare v. Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012); In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[9] Katare, 175 Wn.2d at 35.

[10] RCW 26.50.010(3).

[11] Barber v. Barber, 136 Wn. App. 512, 516, 150 P.3d 124 (2007).

[12] Brewer v. Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999) (citing Moreman v. Butcher, 126 Wn.2d 36, 39, 891 P.2d 725 (1995)).

[13] Appellant's Br. at 21.

But section .191(2)(a)(iii) allows restrictions upon a finding of "a history of domestic violence as defined in RCW 26.50.010(3)," and, as noted above, it is well-established that a history of domestic violence and a showing of present fear allow a finding of statutory domestic violence.[14]  Ren provides no controlling authority to support the proposition that a finding of abuse must satisfy the clinical rather than legal definition of domestic violence.  The issue is whether the court abused its discretion by imposing .191 restrictions.

Guo testified that Ren was physically violent with her twice in China.  The first incident occurred when Guo was watching a movie with a friend and forgot to return Ren's phone call.  When she returned home, he slapped her "hard" across the face.[15]  Ren does not dispute this happened.  She stated the second incident occurred when Ren wanted to "go out with friends."[16]  She took his keys away in an attempt to stop him, and "he tried to choke" her.[17]  Guo stated that Ren has not been physically violent with her since they arrived in the United States, but when he loses his temper, he will "speed up the car . . . threatening [to] crash" or "yell at us."[18]  She also testified "[h]e threatened, that I should have the cemetery for myself or use a weapon to solve the problems."[19]  Guo testified that even after

---

[14] Barber, 136 Wn. App. at 513.

[15] RP (Dec. 5, 2019) at 1005.

[16] RP (Dec. 5, 2019) at 1004-05; RP (Oct. 29, 2019) at 632-33.

[17] RP (Oct. 29, 2019) at 632.

[18] Id. at 633.

[19] Id. at 634.

moving into an apartment with her daughters, she still feels "scared" because Ren has appeared at her apartment building "many times."[20]

McNeil testified that Guo was "really scared" about the amount of guns and knives Ren had.[21] McNeil thought Guo's fear was credible because in domestic violence cases "if there ever was physical abuse, then what happens is the people—it's a control tactic in that the victim can remember the abuse and so they're fearful that could happen again."[22] McNeil also testified that both daughters told her that they were fearful and nervous when Ren was around. And Dr. Kuan diagnosed Ren with a persecutory type of delusional disorder.

The trial court's unchallenged finding is that Ren has a history of physical abuse, and trial testimony demonstrated Guo and her daughters still fear him. The older daughter does not feel safe with him "due to his confusing behavior and problems with anger."[23] The younger daughter was especially upset about Ren kicking the family dog and was scared when he shouted. This is sufficient to support a finding of statutory domestic violence. As a result, the trial court found it was "appropriate to enter limitations in the parenting plan for both domestic violence and Mr. Ren's long struggle with his

---

[20] Id. at 605-06.

[21] RP (Oct. 22, 2019) at 185.

[22] Id. at 185-86.

[23] Id. at 191.

mental health."[24]  Ren fails to establish that the court abused its broad discretion.

Ren contends that the court's RCW 26.09.191 restrictions violated his right to parent because .191(2)(a) does not give the court the "'authority to [completely] eliminate residential time.'"[25]  Ren appears to argue that when the trial court granted Guo a "lifetime" DVPO that included their daughters, the court "effectively eliminated" Ren's residential time.  But Ren's argument is misguided.

The court found that Ren engaged in domestic violence under .191(2)(a)(iii), which allowed it to limit his residential time.  The court also found that Ren was suffering from a "long struggle" with his mental health, which "gets in the way of his ability to parent."[26]  Contrary to Ren's assertion, the court did not completely eliminate Ren's residential time.  Instead, in accordance with the recommendations of McNeil and Dr. Kuan, the court entered a phased parenting plan.  The parenting plan provides for residential time to begin phasing in after six months of successful treatment; Ren controls whether he will comply with the parenting plan's requirements.[27]  If he

---

[24] RP (Dec. 5, 2019) at 1013.

[25] Appellant's Br. at 8-12 (quoting In re Marriage of Underwood, 181 Wn. App. 608, 611, 326 P.3d 793 (2014)).

[26] CP at 55; RP (Dec. 5, 2019) at 1013-14.

[27] To the extent Ren argues the trial court doomed any efforts to comply with treatment requirements by failing to award him adequate assets to obtain the required therapy, we note that in response to similar arguments raised in his motion for reconsideration, the trial court suggested "checking with Dr. Muagan

7

complies, he can petition the court to modify the DVPO and resume residential time with his daughters. The trial court did not abuse its discretion in entering the parenting plan or the DVPO.

## II. Trial Management

Ren appears to contend that the court's management of the trial denied him due process because the six-day bench trial was inadequate, and he was not afforded sufficient time to confer with his counsel prior to trial.

"'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'"[28] Ren appears to challenge the court's management of trial and does not argue he was denied any specific statutory or procedural protection.

We review the judge's trial management decisions for abuse of discretion.[29] A trial court abuses its discretion when its decision is based on untenable grounds or made for untenable reasons.[30] Whether those decisions violated Ren's procedural due process rights are a question of law reviewed de novo.[31] When

---

and Asian Counseling and Referral" to find an available psychiatrist. CP at 52. The record on appeal does not establish treatment is unavailable to Ren.

[28] Gourley v. Gourley, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006) (internal quotation marks omitted) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

[29] Peluso v. Barton Auto Dealerships, Inc., 138 Wn. App. 65, 69, 155 P.3d 978 (2007); State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992).

[30] Rehak, 67 Wn. App. at 162.

[31] Aiken v. Aiken, 187 Wn.2d 491, 501, 387 P.3d 680 (2017) (citing Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 149 Wn.2d 17, 24, 65 P.3d 319 (2003)).

evaluating an alleged procedural due process violation, we weigh "(1) the private interest impacted by the government action; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,' and (3) the government interest, including the additional burden that added procedural safeguards would entail."[32]

Here, the first Mathews factor favors Ren because he has a fundamental interest in parenting his daughters.[33] The third Mathews factor does not, however, because the "government has an equally compelling interest in protecting children and preventing domestic violence or abuse."[34] Regarding the second Mathews factor, Ren argues three trial management decisions were deficient: the court's decision to grant a 30-day, rather than 90-day, continuance, the court's allocation of trial days between the parties, and the court's reliance on Dr. Kuan's evaluation and testimony. Thus, this question turns on whether the court's exercise of discretion in managing the trial risked erroneously depriving Ren of his right to parent.

Ren argues he was unable to prepare for trial because the court did not grant him a 90-day continuance. A trial court's decision to deny a motion to

---

[32] Gourley, 158 Wn.2d at 468 (quoting Mathews, 424 U.S. at 333).

[33] Aiken, 187 Wn.2d at 502.

[34] Id. (citing Gourley, 158 Wn.2d at 468).

continue will be affirmed "'unless no reasonable judge would have reached the same conclusion.'"[35]

Ren sought a 90-day continuance because he obtained new counsel. In response to Ren's counsel's motion to continue, Guo submitted a declaration stating that the divorce had been pending for over a year, that "[a]t least ten times Jie Ren came to the apartment where my children live and I live and stayed there for hours," and "[t]he fear and harm of his behaviors are terribly affecting me and my children from living a normal life."[36] The court balanced these interests by granting Ren a 30-day continuance. Because Ren fails to demonstrate any specific prejudice from the duration of this continuance or that the outcome of trial would have been different had a 90-day continuance been granted,[37] Ren fails to establish the court abused its discretion.

Ren argues the court allocated Guo more time to present her case, preventing him from meaningfully arguing his position. The trial court conducted a six-day bench trial. The court was very flexible, accommodating witness's schedules by allowing them to testify when available rather than requiring them to testify during their party's case in chief. Additionally, witnesses that were listed by both parties were only called once, and the court requested declarations from

---

[35] In re Welfare of N.M., 184 Wn. App. 665, 673, 346 P.3d 762 (2014) (quoting In re Marriage of Landry, 103 Wn.2d 807, 809-10, 669 P.2d 214 (1985)).

[36] CP at 89.

[37] See N.M., 184 Wn. App. at 673 (to show a procedural due process violation from denial of a continuance, a parent must demonstrate specific prejudice or that the outcome of trial would have been different) (citing In re Welfare of R.H., 176 Wn. App. 419, 425, 309 P.3d 620 (2013)).

witnesses on both sides whose "live testimony" would not be beneficial to the case.[38]  And when Ren's counsel told the court that he was unavailable for one of the scheduled trial days because he was moving, the trial court accommodated his schedule.  Notably, Ren's counsel never objected to the amount of time he was provided at trial.  Because the record establishes both parties had an adequate opportunity to present their cases due to the trial court's accommodations, Ren fails to show the court abused its discretion.

Ren argues the court's reliance on Dr. Kuan's evaluation was improper and denied him due process because Dr. Kuan was not "culturally competent."  Even assuming a parent in this setting has a right to a culturally competent evaluator, Ren fails to show Dr. Kuan was not culturally competent.  Dr. Kuan is a fluent and native Mandarin speaker, administered her evaluation in Mandarin, and demonstrated knowledge of political and cultural concerns raised by Ren.  Ren specifically challenged Dr. Kuan's fluency in Mandarin, a claim rejected by Dr. Kuan as "laughable."[39]  The trial court is in the best position to determine whether there was a language barrier and the cultural suitability of the evaluation.[40]  The court viewed Dr. Kuan's evaluation as credible by choosing to rely upon it.  The trier of fact is solely responsible for making credibility determinations.[41]  Ren fails

---

[38] RP (Oct. 24, 2019) at 477-80.

[39] RP (Oct. 23, 2019) at 370.

[40] State v. Sisouvanh, 175 Wn.2d 607, 628-29, 290 P.3d 942 (2012).

[41] Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

to establish he was deprived of a culturally competent evaluation or that the court abused its discretion by relying upon Dr. Kuan.

Because Ren fails to show any risk of deprivation from the trial court's chosen procedures or that the court abused its discretion, the second Mathews factor weighs against him. Ren fails to establish a violation of his procedural due process rights or an abuse of discretion in the trial court's management of the trial or reliance upon Dr. Kuan.

III. Division of Property

Ren contends that the trial court's division of property was not just and equitable.

"A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080."[42] The court can make a just and equitable division without an equal division of assets.[43] The factors a court must consider under RCW 26.09.080 include, but are not limited to, the nature and extent of community and separate property, the duration of the marriage, and the economic circumstances of each spouse.[44] The trial court can also consider other factors such as the parties' age, health, future earnings, employment history, necessity,

---

[42] In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013).

[43] Id. at 262 (citing In re Marriage of White, 105 Wn. App. 545, 549, 20 P.3d 481 (2001)).

[44] Urbana v. Urbana, 147 Wn. App. 1, 11, 195 P.3d 959 (2008).

and financial abilities.[45]  We will affirm unless the appellant demonstrates a

manifest abuse of discretion by the trial court.[46]

Here, the trial court ordered a 65 percent to 35 percent split, favoring Guo,

of the proceeds from the court ordered sale of the couple's $2,275,000 home.  The

trial court awarded each party the accounts in their name and the joint account to

Ren.  The court noted that Guo's separate accounts were "significantly depleted"

because she was using them to support her and her daughters while the divorce

was pending and pay for attorney fees.[47]  Even so, the court also acknowledged

that there "was a disparity" in the amounts in Guo and Ren's separate accounts

and, given that disparity and to promote a timely sale of the residence, the court

found that "Ms. Guo shall allot from her account to Mr. Ren $15,000 when he signs

a lease for a new apartment [by February 1, 2020] and an additional $15,000

when he actually moves out of the house."[48]  Ren was also awarded all of the

assets in China, except the interest in the Shanghai apartment owned by Guo and

her family.  The trial court imputed both Ren and Guo's future incomes at minimum

wage.  The court also noted that Guo would be supporting their daughters by

herself "with little or no child support to assist."[49]  On this record, the court

---

[45] Id.

[46] Id. at 10.

[47] RP (Dec. 5, 2019) at 1021.

[48] Id. at 1027-28.  Because Ren did not move out of their residential home by February 1, 2020, the trial court reduced the amounts he would receive.  If Ren signed a leased by March 1, he would receive $7,500, and if he moved out by March 15, he would receive another $7,500.

[49] Id. at 1026-27.

considered the factors in RCW 26.09.080. Ren fails to show the court abused its broad discretion in how it weighed them when it divided the couple's assets.

V. Fees on Appeal

Ren contends that he is entitled to attorney fees under RAP 18.1, mentioning but not citing authority regarding need and ability to pay. He fails to satisfy the requirements of RAP 18.1 for an award of fees.[50]

Guo requests attorney fees on appeal under RAP 18.9 for a frivolous appeal and under RCW 26.50.060(1)(g) for defending the DVPO. Because arguable issues are raised, the appeal is not frivolous.[51] But as the prevailing party, Guo is entitled to reasonable attorney fees under RCW 26.50.060(1)(g) for defending the DVPO, subject to her compliance with RAP 18.1(d).[52]

Therefore, we affirm.

WE CONCUR:

---

[50] Osborne v. Seymour, 164 Wn. App. 820, 865, 265 P.3d 917 (2011); RAP 18.1(b).

[51] Streater v. White, 26 Wn. App. 430, 434, 613 P.2d 187 (1980).

[52] In re Gourley, 124 Wn. App. 52, 59, 98 P.3d 816 (2004), aff'd sub nom. Gourley v. Gourley, 158 Wn.2d 460, 145 P.3d 1185 (2006).