IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LISA CUMMINGS, dba MOD INVESTIGATIONS, | ) ) ) ) | No. 72162-3-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | |
| WASHINGTON STATE DEPARTMENT OF LICENSING, | ) ) ) | UNPUBLISHED |
| | ) ) | FILED: June 1, 2015 |
| Respondent. | ) ) | |

Cox, J. — Lisa Cummings appeals the superior court order affirming the final order of the Director of the Department of Licensing. The findings and conclusions on which the order is based establish that Cummings violated multiple governing statutes by engaging in certain activities as a private investigator. The order revokes her private investigator and private investigator agency principal licenses for eight years.

The challenged findings are supported by substantial evidence and the findings support the conclusions of law. The Director properly applied the law. And Cummings fails in her burden to show that the Director acted in an arbitrary and capricious manner in imposing the eight year sanction. We affirm.

Cummings opened MOD Investigations with a partner in March 2011. She worked as a part-time investigator and as a "Clarity coach" at her life coaching business, Clarity Coaching. After her partnership ended, Cummings remained at MOD Investigations and later obtained her private investigator agency principal license.

In May 2011, Cummings met Shaun Duncan. She began working with him as a Clarity coach. This involved a long interview process and meetings once or twice a week. Cummings did not receive payment for this work.

Duncan had been in a domestic relationship with Christine Peddle for approximately three years. They had one child together. The termination of their relationship was contentious and involved custody issues, allegations of domestic violence, and litigation. Duncan discussed with Cummings the ending of his relationship with Peddle. In May and June 2011, several protection orders were entered on behalf of Peddle, against Duncan.

In late June 2011, Cummings installed a GPS device on Peddle's car. The device remained on Peddle's car from June to September. During this time, Cummings did not notify law enforcement that she had installed it. Peddle's private investigator eventually discovered the device, and police authorities later determined that Cummings owned it.

In January 2012, Peddle commenced an administrative proceeding with the Department of Licensing against Cummings and her former business partner. She alleged that Cummings owned a GPS device that was installed on her vehicle and that Cummings or her partner were following Peddle and reporting

2

the information to Duncan. Peddle further alleged that she saw Cummings and her partner in court with Duncan at a custody and domestic violence hearing.

The Department conducted an investigation. Following the investigation, the Department issued a statement of charges alleging that Cummings violated RCW 18.165.160(11) and RCW 18.235.130(1), (4), (8), and (10). The Department requested sanctions of an eight year revocation of Cummings's private investigator license and her private investigator agency principal license. Cummings denied the allegations and requested an administrative hearing.

An administrative hearing was held over three days in late March 2013. Following the hearing, the Administrative Law Judge (ALJ) entered findings of fact, conclusions of law, and an initial order affirming both the statement of charges and the Department's eight year sanction.

Cummings petitioned the Director of the Department for review of the ALJ's decision. The Director entered a final order adopting the ALJ's findings and conclusions and affirming the statement of charges and the sanction.

Cummings petitioned King County Superior Court for judicial review of the Director's final order. The superior court affirmed.

Cummings appeals.

## ADMINISTRATIVE PROCEDURE ACT

Our review of an agency action is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW.[1] We review the Director's final order,

---

[1] Olympic Healthcare Servs. II LLC, v. Dep't of Soc. & Health Servs., 175 Wn. App. 174, 180, 304 P.3d 491 (2013).

not the ALJ's decision or the superior court's order.[2] We review the record before the agency.[3]

The party challenging the agency's action bears the burden of demonstrating its invalidity.[4] RCW 34.05.570(3) provides several grounds for which a reviewing court shall reverse an administrative decision. The reviewing court grants relief from an agency decision if it determines that the Director erroneously interpreted or applied the law, the order is not supported by substantial evidence, or the order is arbitrary or capricious.[5]

We review conclusions of law de novo.[6] We review challenged findings of fact for substantial evidence.[7] Unchallenged findings are verities on appeal.[8]

## FINDINGS

Cummings first argues that substantial evidence does not support several of the Director's findings of fact. Specifically, she challenges the finding that she had a private investigator-client relationship with Duncan and the finding that she

---

[2] Id. at 181.

[3] Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[4] RCW 34.05.570(1)(a).

[5] RCW 34.05.570(3)(d), (e), (i).

[6] Olympic Healthcare Servs. II, 175 Wn. App. at 181.

[7] Hickethier v. Dep't of Licensing, 159 Wn. App. 203, 210, 244 P.3d 1010 (2011).

[8] Tapper, 122 Wn.2d at 407.

knew about the no-contact orders and their contents.[9] We conclude that substantial evidence in the record supports these findings.

"Agency findings of fact will be upheld if supported by evidence that is substantial when viewed in light of the whole record before the court."[10] "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises."[11]

The reviewing court views "'the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority,'" which "'necessarily entails acceptance of the fact-finder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.'"[12] "We will not 'disturb findings of fact supported by substantial evidence even if there is conflicting evidence.'"[13]

Here, as an initial matter, the Department argues that this court should treat the challenged findings as verities because Cummings does not properly assign error to them. But the Rules of Appellate Procedure "allow appellate

---

[9] See Appellant's First Amended Opening Brief at 9-20.

[10] William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996).

[11] Id.

[12] Id. (quoting State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)).

[13] McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012) (quoting Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010)).

review of administrative decisions in spite of technical violations when a proper assignment of error is lacking but the nature of the challenge is clear and the challenged finding is set forth in the party's brief."[14]

In this case, Cummings's brief clearly indicates that she challenges the finding that she had a private investigator-client relationship with Duncan as well as the finding that she knew about the no-contact orders. Further, the Department does not allege any prejudice from Cummings's failure to comply with the Rules of Appellate Procedure. Accordingly, we review these challenged findings.

*Private Investigator-Client Relationship*

First, Cummings argues that insufficient evidence supports the finding that she had an investigator-client relationship with Duncan. We disagree.

The Director labeled this a credibility determination. In resolving the conflicting testimony, the Director expressly considered the "demeanor and motivation of the witnesses," the testimony, and the evidence.[15] The Director made the following finding:

> [Cummings] performed investigative services on behalf of Mr. Duncan, and with knowledge of Mr. Duncan's domestic and custody situation. [Cummings] had the training and the means to carry out investigative services, and did so on behalf of Mr. Duncan. As such, I find that there was an active private investigator-client relationship, which included the communication of investigative information from [Cummings] to Mr. Duncan.[16]

---

[14] Ferry County v. Growth Mgmt. Hr'gs Bd., 184 Wn. App. 685, 725, 339 P.3d 478 (2014).

[15] Clerk's Papers at 61.

[16] Id. at 64.

The Director relied on several other findings to support this determination. These findings are also supported by substantial evidence.

The Director found that Cummings was aware of the "acrimonious relationship" between Duncan and Peddle, their ongoing custody dispute, and Duncan's fear that his child would be taken out of state by Peddle.[17] Both Cummings and Duncan testified that Duncan shared information with Cummings regarding his relationship with Peddle. The Director also found that Cummings attended several court hearings related to Duncan's domestic situation with Peddle and that Duncan asked Cummings to attend some of the hearings. In a letter Cummings wrote to the Department, she admitted that she attended court hearings.

Additionally, the Director found that Cummings engaged in private investigator work when she placed the GPS device on Peddle's car, accessed the information, and tracked Peddle's whereabouts. It was undisputed that Cummings owned the device. Both at trial and in her letter to the Department, Cummings admitted placing the GPS device on Peddle's car and accessing information from it. The Director also found that Cummings did not install GPS devices in her capacity as a Clarity coach. But she did engage in such behavior while working as a private investigator. Further, the Director found that Cummings identified herself as a private investigator to the Kirkland Municipal Court.

---

[17] Id. at 63.

Finally, the Director expressly relied on credibility determinations in finding that an investigator-client relationship existed. In particular, the Director found that Cummings's testimony that her relationship with Duncan was limited to a Clarity coach-client relationship "was not credible because she placed a GPS device on Ms. Peddle's car and carried out surveillance on a regular basis . . . ."[18] The Director also found that both Duncan's denial of Cummings's attendance at the hearings and his denial of the private investigator-client relationship were not credible. Additionally, the Director found that "it was not credible that [Cummings] placed the [GPS] device on Ms. Peddle's car solely for her concern for the child."[19]

In sum, Cummings's knowledge of Duncan's contentious relationship with Peddle, her conduct of placing the GPS device on Peddle's car to track her movements, and the Director's credibility determinations, constitute substantial evidence to support the finding that Cummings and Duncan had an investigator-client relationship.

Cummings points to other evidence in the record to support her assertion that she was not Duncan's private investigator. Specifically, she points to evidence that she was introduced to Duncan as a Clarity coach not a private investigator, her own testimony that she did not work as a private investigator for Duncan, and Duncan's testimony that he did not retain Cummings as a private investigator.

---

[18] Id. at 62.

[19] Id. at 63.

8

But "[w]e will not 'disturb findings of fact supported by substantial evidence even if there is conflicting evidence.'"[20] And we take the evidence and the reasonable inferences therefrom in the light most favorable to the Department. This "'necessarily entails acceptance of the fact-finder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.'"[21] In short, the fact that there is conflicting evidence in the record does not defeat the substantial evidence that supports the Director's findings.

Cummings next points to testimony that this case lacks typical signs of an investigator-client relationship, such as a contract, receipts, a retainer, a client file, progress reports, or other documentation. But while such evidence may be typical, Cummings fails to cite any authority that the absence of such evidence is dispositive.

Cummings asserts, "[P]lacing a GPS device on a car or otherwise tracking a person does not make someone a private investigator."[22] But as the Department points out, if a person performs the functions and duties of a private investigator, then the person must be licensed.[23] Thus, this argument does not advance Cummings's position.

---

[20] McCleary, 173 Wn.2d at 514 (quoting Merriman, 168 Wn.2d at 631).

[21] William Dickson Co, 81 Wn. App. at 411 (quoting State ex rel. Lige & Wm. B. Dickson Co., 65 Wn. App. at 618).

[22] Appellant's First Amended Opening Brief at 15.

[23] See RCW 18.165.150(1), (2).

Finally, Cummings argues that the Director's findings on credibility "are not credibility determinations deserving of deference."[24] She asserts that they are findings of fact subject to review. We read this record otherwise and need not further address this argument.

*Knowledge of No-Contact Orders*

Cummings next argues that insufficient evidence supports the finding that she knew about the no-contact orders and their contents. We disagree.

The Director also labeled this a credibility determination. The Director expressly considered the demeanor and motivation of the witnesses, the exhibits, and the testimony and made the following finding:

> [Cummings] knew about the no-contact orders preventing Mr. Duncan from contacting Ms. Peddle and their child. Furthermore, I find that [Cummings] knew about the no-contact order(s) prior to placing the GPS device on Ms. Peddle's car. In fact, [Cummings] attended a hearing with Mr. Duncan at the King County Superior Court on June 24, 2013 [sic], where a no-contact order was discussed and issued. . . . [Cummings] admitted that she installed the GPS device at the end of June of 2011. [Cummings] is a licensed private investigator with an interest in cases involving missing children. Regardless of the initial nature of the relationship between [Cummings] and Mr. Duncan, it was not credible that Mr. Duncan did not disclose the information about custody issues, nor the existence of no-contact orders. Furthermore, [Cummings] knew that Mr. Duncan was arrested and in jail for alleged domestic violence. It was more likely than not, as a private investigator with even a limited background in criminal justice, that [Cummings] would have known about a no-contact order with the alleged victim of domestic violence (Ms. Peddle). Here, there was information about [Cummings's] presence at the courthouse and disputed testimony about whether [Cummings] actually attended the hearings or those portion[s] of the hearings when the no-contact orders were discussed. Because I find that [Cummings] knew about the no-contact orders, I do not need to determine whether

---

[24] Appellant's Reply Brief at 5.

[Cummings] attended a hearing(s) or a portion of the hearing where the no-contact orders were discussed.[25]

The Director relied on several other findings of fact to support this determination. They too are supported by substantial evidence.

For example, the Director found that Duncan talked to Cummings about his child and told her he was concerned for his child's safety. Both Cummings and Duncan testified that Duncan expressed concern to Cummings that his child would be taken out of state. The Director also found that Cummings attended at least a portion of several court proceedings, including Duncan's arraignment pertaining to criminal domestic violence charges, and that protection orders are typically discussed in domestic violence cases. Cummings admitted, both at trial and in her letter to the Department, that she attended portions of court hearings involving Peddle and Duncan. These hearings concerned their domestic situation, custody issues, and no-contact orders.

Further, the Director made several credibility determinations. Specifically, the Director found that because Cummings was present at court hearings and actively involved, her testimony regarding her lack of knowledge of the no-contact order was not credible. Further, the Director stated, "Because of the breadth of [Cummings's] knowledge about Mr. Duncan's domestic situation involving Ms. Peddle, I do not find Mr. Duncan's testimony that he did not talk about custody issues to [Cummings] credible."[26]

---

[25] Clerk's Papers at 60-61.

[26] Id. at 59-60.

11

In short, the findings establishing Cummings's close relationship with Duncan, Cummings's presence at court hearings, and the Director's credibility determinations, provide substantial evidence to support the finding that Cummings knew about the no-contact orders.

Cummings points to other evidence to support her assertion that she did not know about the orders, including Duncan's testimony that he did not see Cummings in the courtroom during the hearings, her own testimony that she did not know about the protection orders, and the investigator's testimony that he did not see Cummings present in the videotapes of the court hearings. But as we already discussed, the existence of contrary evidence does not show the absence of substantial evidence to support this challenged finding. The evidence discussed earlier was sufficient to support the finding, and this court does not reweigh evidence on appeal.

## CONCLUSIONS

Cummings argues that the Department "failed to provide substantial evidence to support the elements of its case that [Cummings] violated RCW 18.165.160(11) and RCW 18.235.130(1), (4), (8) and (10)."[27] Because any one of the following violations would support a sanction and violation of all these statutes supports the sanctions in this case, we disagree.

### RCW 18.165.160(11)

Cummings first contends that the Director erred by concluding that she violated RCW 18.165.160(11). We disagree.

---

[27] Appellant's First Amended Opening Brief at 3.

12

Under RCW 18.165.160(11), the following is unprofessional conduct:

Assisting a client to locate, trace, or contact a person when the investigator knows that the client is prohibited by any court order from harassing or contacting the person whom the investigator is being asked to locate, trace, or contact, as it pertains to domestic violence, stalking, or minor children.

The Director properly concluded that Cummings violated this statute.

As discussed earlier, substantial evidence supports the finding that an investigator-client relationship existed between Cummings and Duncan and that Cummings performed investigative services on behalf of Duncan when she placed the GPS device on Peddle's car and tracked her location. Thus, Cummings assisted Duncan, a client, to locate or trace Peddle. Further, substantial evidence supports the finding that Cummings knew that a court order prohibited Duncan from contacting Peddle. In sum, these findings are sufficient proof of unprofessional conduct under this statute.

Cummings argues that there is not sufficient evidence that Duncan asked her to track Peddle. As we noted previously in this opinion, the Director found that "it was not credible that [Cummings] placed the [GPS] device on Ms. Peddle's car solely for her concern for the child."[28] This express finding implies that Duncan asked Cummings to track Peddle as part of her investigative duties. Her argument that there is insufficient evidence to show that Duncan asked her to track Peddle is unpersuasive and we reject it.

Cummings argues that "[m]erely placing a GPS [device] on another's car cannot rise to 'assisting' without more as [she] could have been engaged in the

_____

[28] Clerk's Papers at 63.

activity for her own, independent purposes or for any other purpose."[29] But the Director expressly rejected this argument. The Director stated, "I am not persuaded that [Cummings] acted independently of Mr. Duncan."[30] Further, the definitions of "assist" are "[t]o give support or aid to" and "to perform some service for."[31] Cummings's conduct falls within the plain definitions of that term. For these reasons, this argument is not persuasive.

Cummings argues that she could not have assisted Duncan if she did not pass any information to him. But she does not provide any authority to support this argument. Further, the plain language of the statute and the definitions of the word "assist" do not support her position. Moreover, Cummings may not have shared information with Duncan simply because the movements she was looking for, such as Peddle leaving the state, did not happen. In short, this argument is not convincing.

### RCW 18.235.130(1)

Cummings next contends that the Director erred by concluding that she violated RCW 18.235.130(1). We disagree.

Under RCW 18.235.130(1), the following conduct constitutes unprofessional conduct:

> The commission of any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession or

---

[29] Appellant's Reply Brief at 10.

[30] Clerk's Papers at 68.

[31] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 132 (2002).

operation of the person's business, whether the act constitutes a crime or not.

In <u>Haley v. Medical Disciplinary Board</u>, the supreme court examined a similar statute related to health professions.[32] That statute provided that "'[t]he commission of any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession'" constituted unprofessional conduct.[33] The supreme court interpreted the statute to prohibit "conduct indicating unfitness to practice the profession."[34] As the supreme court later explained, "[W]hether particular conduct renders a professional unfit to practice is determined in light of the purpose of professional discipline and 'the common knowledge and understanding of members of the particular profession.'"[35]

Here, the Director concluded that Cummings's "continued surveillance and monitoring of Ms. Peddle's location rose to the level of an act of moral turpitude."[36] The Director explained:

> As a licensed private investigator, [Cummings] knew or should have known that she was prohibited from locating or tracing Ms. Peddle because Ms. Peddle had obtained a number of no-contact orders pertaining to domestic violence and Mr. Duncan. Nevertheless, [Cummings] persisted in tracking, monitoring and locating Ms. Peddle's whereabouts. From the end of June 2011, until September 23, 2011, when the device was removed, [Cummings]

---

[32] 117 Wn.2d 720, 726, 818 P.2d 1062 (1991).

[33] <u>Id.</u> (quoting RCW 18.130.180(1)).

[34] <u>Id.</u> at 742.

[35] <u>Heinmiller v. Dep't of Health</u>, 127 Wn.2d 595, 605, 903 P.2d 433 (1995) (quoting <u>Haley</u>, 117 Wn.2d at 743).

[36] Clerk's Papers at 70.

15

had knowledge of the no-contact order and the option to seek assistance from law enforcement or the Department, and take affirmative action to have the device removed. While these actions would have raised questions about the installation of the GPS, [Cummings] chose to take no action. The device remained on Ms. Peddle's vehicle and [Cummings] continued to monitor Ms. Peddle's locations. As such, [Cumming's] continued surveillance, monitoring and tracking of an individual, subject of a no-contact order(s), involving domestic violence . . . constituted unprofessional conduct as an act of moral turpitude under RCW 18.235.130(1).[37]

For the reasons identified by the Director, Cummings's conduct indicates "unfitness to practice the profession." As such, it is an act of moral turpitude. Thus, the Director properly concluded that Cummings committed unprofessional conduct under this subsection.

Cummings argues that she did not violate this statute because the acts alleged "were not performed in . . . the practice of [her] profession."[38] Because there was an investigator-client relationship between Cummings and Duncan, we reject this argument.

Cummings argues that the allegations in this case "are not sufficiently appalling to rise to the level of moral turpitude" because she was motivated by a desire to protect a child and because she was unable to remove the device after she discovered the no-contact order.[39] But the acts demonstrate unfitness to practice the profession, which is the relevant inquiry. Further, one could reasonably conclude that Cummings's actions were appalling.

---

[37] Id.

[38] Appellant's First Amended Opening Brief at 24.

[39] Id.

Cummings minimizes the serious nature of her violation by arguing that her conduct did not put anyone at risk. She points out that Duncan was eventually found not guilty of the domestic violence charge and argues that she never passed any information on to Duncan. But Cummings does not explain how this is relevant to the inquiry of whether her actions demonstrate unfitness to practice the profession. Thus, it is not persuasive.

Finally, Cummings argues that the Department did not establish what constituted "moral turpitude" within the context of the profession of private investigators. But Cummings fails to provide any authority that such testimony is necessary. Further, as discussed earlier, a statute expressly prohibits the type of conduct that Cummings engaged in. It is reasonable to conclude that this conduct constitutes moral turpitude within the context of the profession.

*RCW 18.235.130(4)*

Cummings next argues that the Director erred by concluding that she violated RCW 18.235.130(4). We disagree.

Under RCW 18.235.130(4), the following conduct constitutes unprofessional conduct: "Incompetence, negligence, or malpractice that results in harm or damage to another or that creates an unreasonable risk of harm or damage to another."

"Conduct that falls below a legal standard established for the protection of others against unreasonable risk amounts to negligence."[40]

---

[40] Hickethier, 159 Wn. App. at 213.

Here, after noting the "contentious ending" of Duncan and Peddle's relationship, the Director concluded:

> [Cummings's] installation of a GPS device and monitoring of Ms. Peddle's whereabouts undermined the court system and protection orders that were put into place to protect victims of domestic violence. [Cummings's] continued surveillance and failure to take affirmative steps to remove the device when she was aware of the no-contact orders demonstrated poor judgment and incompetence. In this way, [Cummings's] actions "create[d] an unreasonable risk of harm or damage to another," and jeopardized the protection of the mother and child that were put into place by the judicial system. . . . Therefore, [Cummings's] installation of a GPS device and continued surveillance constituted a violation of RCW 18.235.130(4) as "incompetence, negligence or malpractice that results in harm or damage to another or that creates an unreasonable risk of harm or damage to another."[41]

The Director properly concluded that Cummings violated this section. An administrator with the Department testified that private investigators are obligated not to violate the private investigator laws. RCW 18.165.160(11) makes it clear that a private investigator cannot trace a person when there is a protection order in place. As already discussed, Cummings violated this statute and thus, her conduct fell below a legal standard established for the protection of others against unreasonable risk. Further, Cummings's negligence resulted in risk of harm to another, as it put Peddle and her child in danger.

Cummings argues that the Department "produced no professional testimony regarding what the professional standard was."[42] But the Department

---

[41] Clerk's Papers at 71.

[42] Appellant's Reply Brief at 17.

presented testimony that private investigators are expected to not violate private investigator laws. This testimony establishes a professional standard.

Cummings asserts that no one was injured or put at unreasonable risk of harm. She argues that since Duncan did not know of the device's existence, Peddle "was not put at even theoretical risk of harm."[43] The fact that Peddle obtained protection orders demonstrates that there was risk to Peddle. In short, this argument is wholly unpersuasive.

### RCW 18.235.130(10)

Cummings argues that the Director erred by concluding that she violated RCW 18.235.130(10). We disagree.

Under RCW 18.235.130(10), the following conduct constitutes unprofessional conduct: "Practice or operation of a business or profession beyond the scope of practice or operation as defined by law or rule."

Here, the Director referred back to Cummings's violation of RCW 18.165.160(11). The director then concluded that Cummings's violation of that statute also served as a basis for a violation under this subsection. That conclusion was proper. Cummings operated beyond the scope of practice or operation as defined by law, specifically RCW 18.165.160(11), when she assisted Duncan by tracing Peddle.

### RCW 18.235.130(8)

Cummings next argues that the Director improperly concluded that she violated RCW 18.235.130(8). We disagree.

---

[43] Appellant's First Amended Opening Brief at 30.

Under RCW 18.235.130(8), the following conduct constitutes unprofessional conduct: "Violating any of the provisions of this chapter or the chapters specified in RCW 18.235.020(2) or any rules made by the disciplinary authority under the chapters specified in RCW 18.235.020(2)."

The plain language of this subsection states that any violation of chapter 18.235 RCW constitutes a violation. As discussed earlier, Cummings violated RCW 18.235.130(1), (4), and (10). Thus, the Director properly concluded that Cummings committed unprofessional conduct under this subsection.

## SANCTION

Finally, Cummings challenges the sanction imposed. Specifically, she argues that the Director misapplied the law and acted in an arbitrary and capricious manner. Because she fails in her burden to establish either point, we reject both arguments.

### Application of the Law

Cummings first argues that the Director misapplied the law when it imposed the sanction. We disagree.

As we read her briefing, she appears to make two main arguments.

First, Cummings argues that the Department misstated the law by asserting that its authority to impose sanctions was not reviewable.[44] But even if the Department erroneously indicated to the Director that the Director had no discretion when imposing the sanction, a fair reading of the final order indicates that the Director properly applied the law. The order does not merely defer to the

---

[44] Id. at 32.

Department's determination on the sanction. Rather, it adopts the Department's analysis and conclusion in imposing the recommended sanction of an eight year suspension of both licenses.

Second, Cummings argues that the Director did not observe the governing statute. She points to the following language from the statute:

> In determining what action is appropriate, the disciplinary authority must first consider what sanctions are necessary to protect the public health, safety, or welfare. Only after these provisions have been made may the disciplinary authority consider and include in the order requirements designed to rehabilitate the license holder or applicant.[45]

Cumming asserts that because the Department failed to show that she posed any danger to public health, safety or welfare, the Director was required to consider rehabilitation.

But the Department expressly considered the risk to the public when it determined the appropriate sanction. Thus, it fulfilled its requirements under the statute. Further, the statute states that the disciplinary authority "*may*" consider rehabilitation. Thus, under the statute's plain language, the Director is not required to consider rehabilitation.

*Arbitrary and Capricious*

Cummings next argues that the Director acted in an arbitrary and capricious manner in imposing the sanction. We disagree.

---

[45] RCW 18.235.110(3).

21

Arbitrary and capricious action is "'willful and unreasoning action, without consideration and in disregard of facts and circumstances.'"[46] "'Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.'"[47] "Action taken after giving respondent ample opportunity to be heard, exercised honestly and upon due consideration, even though it may be believed an erroneous decision has been reached, is not arbitrary or capricious."[48] The "harshness" of an agency's sanction is not the test for arbitrary and capricious action.[49] "Agencies 'need not fashion identical remedies', and the courts may 'not enter the allowable area of [agency] discretion.'"[50]

"An agency's determination of sanctions should be accorded considerable judicial deference as it is peculiarly a matter of administrative competence."[51] "'[T]he scope of review of an order alleged to be arbitrary or capricious is narrow, and the challenger carries a heavy burden.'"[52]

---

[46] Heinmiller, 127 Wn.2d at 609 (quoting Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)).

[47] Id. (quoting Pierce County Sheriff, 98 Wn.2d at 695).

[48] Id. at 609-10.

[49] Id. at 609.

[50] Brown v. Dep't of Health, 94 Wn. App. 7, 17, 972 P.2d 101 (1998) (alteration in original) (internal quotation marks omitted) (quoting Shanlian v. Faulk, 68 Wn. App. 320, 328, 843 P.2d 535 (1992)).

[51] Id. at 16.

[52] Id. (quoting Keene v. Bd. of Accountancy, 77 Wn. App. 849, 859, 894 P.2d 582 (1995)).

A licensed private investigator may be sanctioned under RCW 18.165.220 and RCW 18.235.110. Both statutes allow the Director to revoke private investigator licenses upon a determination that the licensee engaged in unprofessional conduct.

Here, the Director revoked Cummings's licenses for a period of eight years. The Director adopted the Department's conclusion that "the number and severity of violations and the potential for harm" warranted the sanction.[53]

At the hearing, a Department administrator explained how the Department determines appropriate sanctions:

> [The Department] relies on the input from people with a long history within the Department who have worked within sanctioning. It relies on a lot of discussion, a lot of allowing each case to be based on its own individual merits. Everything is considered, everything is discussed, and everything is rediscussed. If one person doesn't agree, we don't go forward until everybody is comfortable with where we're at.[54]

She also explained that the Department considers a number of factors. In particular, the Department considers the nature of the violation, the severity of the harm, and the risk that the conduct poses to the public. The Department also considers the respondent's willingness to cooperate with the investigator, the number of victims harmed, and the level of damage done.[55]

---

[53] Clerk's Papers at 73.

[54] Id. at 900.

[55] Id. at 901.

The administrator testified that the maximum penalty that the Department requests is 10 years.[56] Her opinion was that a sanction less than eight years would not adequately protect the public in this case. She stated:

> Because of the risk and the actions of Lisa Cummings that were so close to the point of something that could have turned into a more violent situation or the potential of death, I mean it's very clear that to protect the public this private investigator should not be allowed to practice.[57]

She also explained why the Department recommended an eight year revocation in this case rather than nine years or five years:

> [O]ur maximum is 10 years, and part of our discussion on that decision is that when we want to go to 10 years, we're looking at those are generally used for somebody who is like a sex offender or something of that kind of nature.[58]

This testimony shows that the sanction, while harsh, was not imposed as a result of willful and unreasoning action. There was due consideration of the individual facts of this case by the Department and the Director based on the recommendations of several people who have experience determining appropriate sanctions. The violations in this case were very serious, despite Cummings's arguments to the contrary. Cummings's actions in tracing Peddle, while Duncan was under no-contact orders, placed Peddle at potential risk and could have escalated into a violent situation. Nevertheless, Cummings still fails to acknowledge the seriousness of her behavior or recognize the dangers that it posed.

---

[56] Id. at 902.

[57] Id.

[58] Id.

The Department and the Director considered the sanction's magnitude relative to other types of violations. Moreover, they considered and rejected the claim that there were substantial mitigating factors that warranted a lesser sanction. Finally, Cummings knew that an eight year sanction was at issue, yet she did not conduct discovery to determine whether comparators existed for similar violations. The party facing discipline "'bears the burden of showing the Board's recommended sanction is not proportionate.'"[59]

In short, Cummings fails in her burden to show that the sanction is arbitrary and capricious.

Cummings points out that the superior court, sitting on appellate review, concluded that the sanction was not arbitrary and capricious but expressly wrote, "Though the relative intent and lack of experience could have been better incorporated."[60] In view of the fact that the superior court affirmed, this comment does nothing to show that the sanction was either arbitrary or capricious.

Cummings argues that the Department considered "erroneous facts" in reaching its decision, because there was no risk to the public and arguably no risk to Peddle. We reject this for reasons already discussed.

Finally, Cummings argues that the sanction was arbitrary and capricious because the Department did not interview Duncan, and this "left [the Department]

---

[59] In re Disciplinary Proceeding Against Petersen, 180 Wn.2d 768, 790, 329 P.3d 853 (2014) (quoting In re Disciplinary Proceeding Against Preszler, 169 Wn.2d 1, 38, 232 P.3d 1118 (2010)).

[60] Clerk's Papers at 2004.

with a very incomplete picture."[61] But again, Cummings had an opportunity to present her arguments, including Duncan's testimony, at the hearing. Thus, this is not persuasive.

We affirm the superior court order affirming the final order of the Department of Licensing.

_____
Cox, J.

WE CONCUR:

_____
Leach, J.

_____
Appelwick, J.

---

[61] Appellant's First Amended Opening Brief at 41.