IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MELISSA M. NORTON,<br><br>               Appellant,<br><br>         v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF HEALTH,<br><br>              Respondent. | No. 80344-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — After auditing Dr. Melissa Norton's veterinary practice, the Department of Health (Department) issued a Statement of Charges alleging deficient record-keeping. Norton requested a hearing. The Department issued an Amended Statement of Charges also alleging substandard veterinary care of dogs and unsanitary conditions in her practice. After a hearing, the Veterinary Board of Governors (Board) permanently revoked Norton's veterinary license. Norton petitioned for judicial review to the trial court, which petition it denied. Norton appeals. We affirm.

I. BACKGROUND

In 2014, Norton signed Stipulated Findings of Fact, Conclusions of Law, and Agreed Order (2014 Agreed Order). Under the 2014 Agreed Order, the Board found that Norton had kept inadequate practice records and concluded that she had committed unprofessional conduct. The Board placed Norton's veterinary license on at least two years of probation, required her to complete

Citations and pin cites are based on the Westlaw online version of the cited material.

continuing education courses, and ordered her to pay a fine. Under the 2014

Agreed Order, it also imposed the following condition allowing audits of her

practice:

> In addition to any other inspections that the Board may make, [Norton] shall permit a [Department] investigator, on an unannounced basis, to audit [Norton]'s practice, including patient records, up to four (4) times per year for the duration of the probationary period. The audit will take place at [Norton]'s place of employment or practice. The [Department] investigator shall have discretion to audit up to forty (40) records per audit.

In November 2015, Department investigators audited Norton's practice.

The investigators collected patient records, took photos of the clinic, and took

photos of outdoor kennels near the clinic. The clinic's operating room had a

"total lack of cleanliness," and the outdoor kennels strongly smelled of urine and

feces. The outdoor kennels held 38 dogs at the time of the audit. Because of

the rain, the concrete floors of the kennels were wet, and the kennels had no

heating units. Although the kennels had roofs, the dogs in the kennels were wet

during the audit. Norton told the investigators that she had just received the dogs

on behalf of Seattle Pug Rescue and that she planned to do amputations on two

of them. Norton had acted as the veterinarian for Seattle Pug Rescue for years.

The Department issued a Statement of Charges against Norton that

alleges that she had failed to sufficiently document records of physical

examinations, diagnoses, and treatment plans for six dogs. Norton requested a

hearing about the allegations.

At an August 2, 2017 prehearing conference, the Board admitted a copy of the 2014 Agreed Order as an exhibit. Attorney Elizabeth Steen appeared at the prehearing conference on Norton's behalf.

After the prehearing conference but before the hearing, the Board issued an Amended Statement of Charges against Norton. It additionally alleges that Norton had not provided the six dogs from the original Statement of Charges with adequate veterinary care, that her surgical and examination facility was unsanitary on the day of the audit, and that the outdoor kennels were unsanitary.

Before the hearing, Steen moved to remove the presiding officer, Health Law Judge Jerry Villarreal, contending he had acted prejudicially against her by holding her to a higher standard than the Department's male attorney. Chief Health Law Judge Roman Dixon denied the motion because Judge Villarreal had not shown bias or prejudice against Steen.

At a January 24, 2018 prehearing conference, Judge Villarreal admitted 121 photos taken by Department investigators at Norton's practice, including photos of the outdoor kennels.

In May 2018, Steen withdrew from representing Norton. After withdrawing, Steen submitted two ex parte letters to Chief Judge Dixon. Chief Judge Dixon later characterized Steen's letters as "aggressive, offensive, intentionally designed to disrupt the tribunal and provoke animosity and wholly unacceptable," and ordered Steen to refrain in engaging in ex parte contact.

At the August 2018 hearing, an expert witness for the Department testified that Norton had grossly violated the applicable standard of care by kenneling the

3

dogs outdoors in wet conditions, and that the kenneling posed a moderate risk of harm to the animals. The expert also testified that the unsanitary conditions in the surgical facility and kenneling of dogs near the surgical table posed a moderate to severe risk of harm to the animals.

After the hearing, the Board issued Findings of Fact, Conclusions of Law, and a Final Order that permanently revoked Norton's veterinary license. The Board concluded that the Department had proven all its allegations of unprofessional conduct both by a preponderance of the evidence and by clear and convincing evidence. In imposing its sanction, the Board concluded that Norton's history of unprofessional conduct and practice below the veterinary standard of care warranted permanent revocation of her license because she showed she cannot be rehabilitated.

Norton petitioned for judicial review of the order and sanction, which petition the trial court denied.

## II. ANALYSIS

Norton says that the Board erred by not suppressing the evidence related to the outdoor kennels and that it erred in applying two standards of proof. She also claims that the Board erred by admitting the 2014 Agreed Order before deciding the sanctions issue, that Judge Villarreal erred by failing to recuse himself, and requests an award of attorney fees. We disagree with Norton's claims.

We review an agency's findings of fact for substantial evidence and review de novo its conclusions of law. Cummings v. Dep't of Licensing, 189 Wn. App. 1,

4

10, 355 P.3d 1155 (2015). Substantial evidence is evidence sufficient to "persuade a fair-minded person of the truth of the declared premises." Id. We review the evidence and inferences from it "in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority" and will not "disturb findings of fact supported by substantial evidence even if there is conflicting evidence." Id. at 10–11 (quoting William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996), and McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012).

Norton assigns error to nearly all the Board's findings of fact and conclusions of law. But except as noted for specific findings below, Norton does not say why substantial evidence does not support those findings of fact, or why the findings do not support the conclusions of law. She has thus waived any assignments of error not noted below. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding a party waives an assignment of error they do not support with argument). Norton says for the first time in a footnote in her reply brief that substantial evidence does not support Finding of Fact 1.2, which states that Norton agreed to audits of her veterinary practice under the 2014 Agreed Order. She also says that the remaining findings do not support the trial court's conclusions that she committed unprofessional conduct. But "an issue raised and argued for the first time in a reply brief is too late to warrant consideration." Id. And unchallenged findings of fact constitute verities on appeal. Cummings, 189 Wn. App. at 10.

A.  Motion to Suppress

Norton says for the first time on appeal that the Department searched the outdoor kennels in violation of article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution.  She says that the kennels were a part of her private residence, not her practice, so the search violated her right to privacy in her private affairs.[1]  Thus, she claims, we should suppress the evidence related to the search.[2]  The Department counters that she waived this issue, and that if she did not, the search was proper.  We agree that Norton waived this issue.  But even if we considered it, the claimed search was proper and we would decline to suppress the outdoor kennel evidence.

1.  Waiver

An appellant in an administrative appeal may not raise issues they did not raise to the adjudicating agency except in these circumstances, none of which Norton claims to be present here:

> (a) The person did not know and was under no duty to discover or could not have reasonably discovered facts giving rise to the issue;

---

[1] She also says, citing Seymour v. Department of Health, Dental Quality Assurance Commission, that because RCW 18.130.180(8) requires her to comply with the administrative audit, we cannot interpret her cooperation with it as voluntary consent to an otherwise unconstitutional search.  152 Wn. App. 156, 170–171, 216 P.3d 1039 (2009).  Norton's RCW 18.13.180(8) claim provides her reasoning as to why the search was unconstitutional and is not an independent claim under the statute; this more accurately characterizes her argument compared to her claim the search violated RCW 18.130.180.  But given our conclusion below, we need not address this issue.

[2] Norton does not specify which "illegally obtained evidence" related to the search of the outdoor kennels the Board should have suppressed, but presumably, her proposed suppression motion would include the photographs of the outdoor kennels and any testimony about the search of them.

(b) The agency action subject to judicial review is a rule and the person has not been a party in adjudicative proceedings that provided an adequate opportunity to raise the issue;

(c) The agency action subject to judicial review is an order and the person was not notified of the adjudicative proceeding in substantial compliance with this chapter; or

(d) The interests of justice would be served by resolution of an issue arising from:

(i) A change in controlling law occurring after the agency action; or

(ii) Agency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency.

RCW 34.05.554.

In King County v. Washington State Boundary Review Bd. for King County, our Supreme Court offered policy justifications for not considering arguments a party fails to raise to the agency:

[R]eversal of an agency on grounds not raised before the agency could have a seriously demoralizing effect on administrative conduct. Knowing that even decisions made with the utmost care might be reversed on heretofore undisclosed grounds, administrative agencies could become careless in their decisionmaking. Enforcing RCW 34.05.554 thus serves important policy goals associated with the integrity of the administrative process.

122 Wn.2d 648, 668–69, 860 P.2d 1024 (1993).

Norton says we may consider her claim that the search was unconstitutional because RCW 34.05.570(3)(a) and (4)(c) allow a reviewing court to overturn an agency order in an adjudication or other agency action if those actions are unconstitutional. But we read this statute with RCW 34.05.554, which specifically addresses circumstances when a party does not raise an argument to the agency, and does not include an exception for such claims. And nothing in

RCW 34.05.570 addresses a situation in which an appellant failed to raise an issue below.

Because Norton's claim does not fall under one of the exceptions in RCW 34.05.554, we conclude that she waived it.

2. Merits

Even if we considered the issue, we would conclude that the search of the outdoor kennels was proper and decline to suppress the evidence related to it.

Norton says that the search was improper because the outdoor kennels were a part of her private residence and not her veterinary practice. She says that while the investigators could audit her veterinary practice, they lacked authority to search any portion of her private residence.[3]

Article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution prohibit warrantless searches and seizures unless one of the "'jealously and carefully drawn exceptions' to the warrant requirement" applies. State v. Houser, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S. Ct. 2586, 2590, 61 L. Ed. 2d 235 (1979)).

The 2014 Agreed Order authorizes the Department to conduct audits at Norton's place of employment or practice.[4] The Board found that the outdoor

---

[3] For the first time in her reply brief, Norton asserts that principles of contract law govern the scope of the allowed audit and that the 2014 Agreed Order's definition of "place of employment or practice" can encompass only her clinic. Since she raises this claim for the first time in her reply brief, we need not consider it. See Cowiche, 118 Wn.2d at 809.

[4] Norton concedes that the Department could audit her veterinary facility without violating article I, section 7 or the Fourth Amendment.

kennels were a part of Norton's veterinary practice. Substantial evidence supports this finding.

Investigators saw the outdoor kennels from inside the veterinary clinic and they are next to the clinic. Norton told them that she planned to perform amputations on two of the animals that were confined in the kennels. WAC 246-933-310(6) defines a veterinary medical facility as "any premise, unit, structure or vehicle where any animal is either received or confined, or both, to be examined, diagnosed or treated medically, surgically or prophylactically." Given the outdoor kennels' adjacency to the clinic and Norton's stated plans to perform surgery on at least two of the animals confined in the outdoor kennels, substantial evidence supports the trial court's finding that the kennels were a part of Norton's veterinary practice. And nothing in the record suggests that the outdoor kennels were a part of Norton's private residence.

Norton analogizes to Colonnade Catering Corporation v. United States, in which the Alcohol and Tobacco Tax Division of the Internal Revenue Service, without a warrant, searched a catering establishment's premises, forced entry to a locked storeroom, and seized liquor bottles. 397 U.S. 72, 73, 90 S. Ct. 774, 25 L. Ed. 2d 60 (1970). The United States Supreme Court held the seizure was not proper without a warrant, since the officers lacked statutory authority to force entry or seize property. Id. at 76–77. But here, the 2014 Agreed Order authorized the audit of Norton's practice, of which the outdoor kennels were a part. And the investigators did not force entry to discover the outdoor kennels.

9

Since the outdoor kennels were a part of Norton's practice, the search did not intrude on Norton's private affairs in violation of the Washington or United States Constitution.[5]  Thus, we would not suppress the evidence related to the outdoor kennels.[6]

B. Standards of Proof

Norton says the Board violated her right to due process by applying both a preponderance of the evidence standard and a clear and convincing evidence standard.  She claims that because it applied both standards, it is impossible to tell if the Board abided by the higher burden, and that consideration of the lesser burden caused her prejudice.  We conclude the Board did not err.

Norton analogizes to Nguyen v. Department of Health, in which our Supreme Court overturned a revocation of a medical license because the Medical Quality Assurance Commission (MQAC) applied a preponderance of the

---

[5] The State says in the alternative that if the outdoor kennels were not a part of Norton's practice, the plain view exception to the warrant requirement allowed discovery of the evidence related to the kennels.  Since Norton waived this issue and the kennels were a part of her practice, we need not consider it.  But even if we did, we would conclude that the plain view exception allowed discovery of the outdoor kennel evidence. The plain view discovery of evidence does not violate article I, section 7 or the Fourth Amendment, and no search has occurred, if an investigator has a prior justification for the intrusion and they immediately recognize the evidence before them.  State v. Khounvichai, 149 Wn.2d 557, 565–66, 69 P.3d 862 (2003).  Also, "[p]rivate affairs do not include what a person voluntarily exposes to the general public."  Washington Pub. Employees Ass'n v. Washington State Ctr. for Childhood Deafness & Hearing Loss, 194 Wn.2d 484, 506 n.10, 450 P.3d 601 (2019).  The 2014 Agreed Order authorized Department investigators to conduct an audit of Norton's veterinary practice under the 2014 Agreed Order, and they could see the adjacent outdoor kennels from inside the clinic.

[6] Norton also says, assuming we suppress the evidence related to the outdoor kennels, that the permanent revocation of her veterinary license was arbitrary and capricious.  Since we decline to suppress the outdoor kennel evidence, we do not reach this claim.

evidence standard instead of a clear and convincing evidence standard. 144 Wn.2d 516, 534, 29 P.3d 689 (2001). But this situation more resembles Lang v. Department of Health, in which the Dental Quality Assurance Commission and MQAC applied both a preponderance of the evidence and clear and convincing evidence standard because of a Court of Appeals split on which standard applied. 138 Wn. App. 235, 247, 156 P.3d 919 (2007). Our Supreme Court settled the controversy by holding that the clear and convincing standard applied in professional license disciplinary proceedings. Id. The court held that it was not improper for the Commissions to apply both standards, since they ultimately found the violations were supported by the higher standard. Id. at 247–48. It also held that the appellants failed to show prejudice, since they presented no evidence that the presiding officer did not apply the clear and convincing standard. Id. at 248.

The Board concluded that there was "legal uncertainty regarding the standard of proof for disciplinary hearings" and applied both the preponderance of the evidence standard and the clear and convincing evidence standard.[7] The

---

[7] It appears the trial court was justifiably unsure about which standard of proof applied. Norton says that under Nguyen, the clear and convincing evidence standard applies to veterinary disciplinary proceedings. 144 Wn.2d at 534 (holding that the burden of proof against medical practitioners in disciplinary proceedings is clear and convincing evidence). In Ongom v. Department of Health, our Supreme Court extended Nguyen to hold that the burden of proof in all professional disciplinary proceedings is clear and convincing evidence. 159 Wn.2d 132, 142–43, 148 P.3d 1029 (2006). But in Hardee v. Department of Social and Health Services, our Supreme Court overruled Ongom and held that the clear and convincing evidence standard did not apply to administrative hearings to revoke a child home care license. 172 Wn.2d 1, 18, 256 P.3d 339 (2011). But Hardee did not overrule Nguyen and endorsed its application of the higher standard specifically in "the unique context of a medical doctor's property interest in [their] license to practice medicine." Id. at 12. It appears no case has since analyzed whether Nguyen's holding applies to veterinary disciplinary proceedings.

Board's conclusions of law clearly state that the Department proved, by the higher clear and convincing evidence standard, that Norton committed unprofessional conduct. Norton claims she suffered prejudice because it was unclear to the Board which standard might apply, but such was the case in Lang and the court held that the appellants did not show prejudice. She also offers the conclusory argument that the Board's imposition of a permanent revocation of her license shows she suffered prejudice, which is unconvincing. We conclude the Board did not err, since it applied the higher standard despite its uncertainty about which standard applied, and since Norton has presented no evidence of prejudice.

C. 2014 Agreed Order

Norton says for the first time on appeal that Judge Villarreal erred by admitting the 2014 Agreed Order before the Board reached its findings on the alleged violations. She characterizes the 2014 Agreed Order as inadmissible ER 404(b) evidence,[8] and says such evidence is admissible only after the Board has made a finding on the merits and is deciding the sanctions issue. The Department counters that Norton waived this claim, and alternatively says that the judge did not err by admitting the record. We conclude that Norton waived this claim. And even if we considered the issue, we would conclude that the trial

---

[8] Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

court did not err, and that any error in admitting the 2014 Agreed Order was harmless.

RCW 34.05.554, which bars consideration of issues not raised to the deciding agency, provides no exception for issues of this nature. And under the meaning of RAP 2.5(a)(3), "[a]n evidentiary error, such as erroneous admission of ER 404(b) evidence, is not of constitutional magnitude." State v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). As to whether any error was manifest, Norton makes only conclusory assertions that admission of the record prejudiced the Board against her and makes her claim under this rule for the first time in her reply brief, which is too late to warrant consideration. Cowiche, 118 Wn.2d at 809. We conclude that Norton waived this claim.

Even if we considered the claim, we would conclude the trial court did not err. We review for abuse of discretion the admission of evidence in an administrative adjudication. Univ. of Washington Med. Ctr. v. Dep't of Health, 164 Wn.2d 95, 104, 187 P.3d 243 (2008). The adjudicator abuses its discretion if its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Bayley Constr. v. Dep't of Labor & Indus., 10 Wn. App. 2d 768, 795–96, 450 P.3d 647 (2019).

No portion of the Washington Administrative Code cited by Norton prohibits an agency from considering evidence related to aggravating factors when deciding whether a person committed unprofessional conduct.

As to Norton's characterization of the 2014 Agreed Order as ER 404(b) evidence, the rules of evidence serve as guidelines for evidentiary rulings in

13

administrative hearings, but an agency must "exclude evidence that is excludable on constitutional or statutory grounds or on the basis of evidentiary privilege," and "may exclude evidence that is irrelevant immaterial, or unduly repetitious." RCW 34.05.452(1), (2). And an agency is not bound to strictly apply the rules of evidence. Dep't of Transp. v. Inlandboatmen's Union of the Pac., 103 Wn. App. 573, 581, 13 P.3d 663 (2000).

The Department says it offered the 2014 Agreed Order not just for sanctions purposes, but also "because it provide[d] the reason that investigators were on [Norton's] premises for the audit," and it says that the Amended Statement of Charges cited the 2014 Agreed Order in the alleged facts section. And indeed, the 2014 Agreed Order showed the scope of audits allowed by the sanctions, an issue relevant to Norton's claim that the search of her kennels was improper. But the 2014 Agreed Order identifies prior wrongs and acts by Norton and the Department makes no claim that the evidence falls under any of the exceptions enumerated in ER 404(b). Still, in any event, the agency was not bound by the rule.

The State does not say that the admission constituted harmless error, but even if the agency were bound by ER 404(b), any error in the admission was harmless. In analyzing the erroneous admission of evidence in violation of ER 404(b), we apply the nonconstitutional harmless error standard. State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). In doing so, the court will ask if "within reasonable probabilities, had the error not occurred, the

14

outcome of the trial would have been materially affected." Id. (quoting State v. Gresham, 173 Wn.2d 405, 433, 269 P.3d 207 (2012).

Aside from documenting the fact of the 2014 Agreed Order and the misconduct found in it, the Board's findings of fact and conclusions of law do not address any unprofessional conduct found in the 2014 Agreed Order. The sanctions findings do address the 2014 Agreed Order, but Norton concedes that the Board properly considered her prior misconduct in entering its sanction. Nor does Norton claim, beyond a footnote in her reply brief, that the Board's findings of fact do not support its conclusions that she committed unprofessional conduct. And an issue raised for the first time in a reply brief is too late to warrant consideration. See Cowiche, 118 Wn.2d at 809. Any error from the admission of the 2014 Agreed Order was harmless.

D.  Recusal

Norton says that Judge Villarreal erred by failing to recuse himself, thereby violating her due process rights. In so arguing, Norton offers different grounds than those offered through Steen below. Norton says that Judge Villarreal should have recused himself because by the time of the hearing, he was "aware of the personal attacks by Ms. Steen toward the tribunal." She says these attacks biased Judge Villarreal against her, and that he showed bias against her by admitting the 2014 Agreed Order and photos of the search of the

outdoor kennels.  We conclude that Judge Villarreal did not err by declining to recuse himself.

A presiding officer in an administrative hearing may be disqualified for bias, prejudice, or interest.  RCW 34.05.425(3).  The "principles relating to disqualification are the same whether the proceeding is before a judge or an administrative body."  Ritter v. Bd. of Comm'rs of Adams County Pub. Hosp. Dist. No. 1, 96 Wn.2d 503, 513, 637 P.2d 940 (1981).

At least three types of bias call for disqualification in the administrative law context:

> (1) prejudgment concerning issues of fact about parties in a particular case; (2) partiality evidencing a personal bias or personal prejudice signifying an attitude for or against a party as distinguished from issues of law or policy; and (3) … an interest whereby one stands to gain or lose by a decision either way.

Faghih v. Dep't of Health, Dental Quality Assurance Comm'n, 148 Wn. App. 836, 842, 202 P.3d 962 (2009) (quoting Ritter, 96 Wn.2d at 512).  The party asserting bias bears the burden of proving it and must overcome a presumption that the judge or administrative agency is not biased.  Id.  We review for abuse of discretion a disqualification decision.  Id. at 843.  While Norton does not specify which form of bias under Faghih required disqualification, her claim appears most like that in category (2).

In her analysis, Norton does not specifically point to which "attacks" by Steen caused Judge Villarreal to be biased against her.  But after withdrawing, Steen submitted two ex parte letters to Chief Judge Dixon that the judge later characterized as "aggressive, offensive, intentionally designed to disrupt the

16

tribunal and provoke animosity and wholly unacceptable." But these letters came after Judge Villarreal admitted the 2014 Agreed Order and the photographs, so they did not cause a bias against Norton that manifested itself in admission of those two exhibits.

Judge Villarreal did not abuse his discretion by failing to recuse himself.

E. Attorney Fees

Norton requests attorney fees and expenses under RCW 4.84.350(1), which requires a court to grant such an award to a qualified party that prevails in judicial review of an agency action. "A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought." RCW 4.84.350(1). Since Norton has not prevailed on any issue, we deny her request.

We affirm.

_____
Chun, J.

WE CONCUR:

_____
Verellen, J.

_____
Appelwick, J.

17